[No. 32033. *En Banc.* December 4, 1952.]

HARRY S. REW *et al., Respondents,* v. BENEFICIAL STANDARD LIFE INSURANCE COMPANY, *Appellant.*[1]

[1]Reported in 250 P. (2d) 956.

*Keith, Winston, MacGillivray & Repsold* and *John T. Day,* for appellant.

*Ray F. Cater* and *C. E. Ellis,* for respondents.

DONWORTH, J.—This is an action on an insurance contract denominated "World-Wide Hospital and Surgical Expense Policy for Family Groups."

For a consideration, defendant insurer issued to plaintiffs, in Spokane, a policy wherein it agreed, among other things, to pay for plaintiffs' benefit the sum of ten dollars per day while either of them

". . . because of sickness or accidental bodily injury covered by this policy, shall be necessarily confined as a resident bed patient within any hospital upon the advice of, and regularly attended by, a legally qualified physician or surgeon, but not to exceed ninety days for any one accident or sickness."

The policy was issued for a period of one year ending February 8, 1951, and was subsequently renewed for one additional year. It provided that plaintiffs should have the sole right to select any hospital. The policy also covered the cost of ambulance, laboratory service, drugs, dressings, and certain other expenses in amounts not exceeding specified limits.

One section of the policy, under the heading "Exceptions and Limitations," read in part as follows:

"The word hospital as used in this policy shall not include a rest, convalescent or nursing home."

On December 26, 1950, plaintiff wife suffered a cerebral vascular accident, or stroke, which partially paralyzed and completely disabled her. She was taken by ambulance to

the Deaconess Hospital, a general hospital in Spokane approved by the American College of Physicians and the American College of Surgeons, where for eighteen days she was a bed patient under the care of a legally qualified physician. During this period of time she was acutely ill and in a semicomatose condition. Thereupon, she was removed by ambulance to the Valley View Convalescent Home near Dishman, Washington, operated by a Mr. and Mrs. Stockman, where she was a bed patient under the care of the same physician until June 12, 1951. The Stockmans have operated and done business as the Valley View Convalescent Home since 1948 and have advertised for "guests." There are, ordinarily, from twelve to eighteen such persons at the home.

The Valley View Convalescent Home on January 13, 1951, when plaintiff wife became a patient there, was a licensed "Place of Refuge" as defined by chapter 100, § 1, p. 273, Laws of 1945 (Rem. Supp. 1945, § 8358a, since amended; cf. RCW 74.32.010).

At all times from January 13, 1951, until June 12, 1951, a registered nurse was on duty at the convalescent home, which was equipped with the necessary facilities for administering medications and oxygen. It had no surgery nor obstetric equipment.

While she was a patient at the home, plaintiff wife received medications. She was a helpless bed patient for more than the ninety-day period covered by the policy.

Shortly after his wife had suffered the stroke, plaintiff husband presented a claim to defendant for hospitalization benefits. He later presented an amended claim. Defendant denied any liability under the policy, and plaintiffs then brought this action seeking to recover ambulance and medication costs and the additional sum of nine hundred dollars for the full limit of ninety days' hospitalization.

Defendant answered, denying the material allegations of the complaint and setting up two affirmative defenses: (1) that the cerebral vascular accident was caused by a condition existing prior to the effective date of the policy and was

therefore not covered by the policy, and (2) that the Valley View Convalescent Home was not a hospital within the policy coverage.

Plaintiffs' demurrer to the first affirmative defense was overruled, and they replied, denying the allegations of the affirmative defenses.

One day prior to the trial of the action, defendant filed notice that it had deposited in the registry of the court a tender in the sum of two hundred twenty-five dollars (accompanied by an itemized statement showing how it was made up, including costs to date of order of sixteen dollars), and also gave notice that it would move for leave to withdraw its first affirmative defense. Leave to do so was granted by the trial court.

The action was tried to the court sitting without a jury. Plaintiffs introduced testimony relative to the custom among doctors in Spokane of removing stroke patients from general hospitals to nursing or convalescent homes as soon as they might be moved so that there would be sufficient space in the general hospitals to care for those acutely ill. In response to a question asked on cross-examination as to the difference between ordinary hospitals and a "place of refuge," the county health officer, one of two licensed physicians testifying on behalf of plaintiffs, said:

"Well, in the first place, I would say that the use of a nursing home or a place of refuge or convalescent place is for the care of non-acutely ill people, whereas the hospital, in contradistinction, would take the acute as well as the chronic. We look toward these places as being places for people with chronic diseases where we can place them in such a place and give them adequate care. They are limited in the rest homes, as compared to the hospitals, in the amount of service that is extended."

Similar testimony was given by the other physician.

Defendant presented no evidence. In his oral decision at the close of the case, the trial court remarked upon the facilities maintained at the Valley View Convalescent Home and upon the fact that the policy contained no definition of a hospital.

The trial judge noted that it was the custom among doctors to remove patients from the hospitals to "Places of Refuge" as soon as practicable. He concluded that, since respondent wife secured in the convalescent home the same care she would have received at the Deaconess Hospital had she remained there, the Valley View Convalescent Home was actually a hospital within the coverage of the policy.

The court thereafter entered its findings, conclusions, and judgment for plaintiffs in the total sum of $929, which included a recovery of hospitalization costs at the rate of ten dollars per day for ninety days. Defendant has appealed from this judgment.

Appellant insurer makes six assignments of error, but concedes that they present but one question: Was the Valley View Convalescent Home a hospital within the coverage of the policy? The question is one solely of law.

Neither appellant nor respondents have referred to any case directly in point, nor have we found any. *Employers Casualty Co. v. Givens,* 190 S. W. (2d) (Tex. Civ. App.) 155, cited by appellant, is different on its facts.

This court has laid down and followed the rule that:

"A policy of insurance is a contract, and its language, like that of any other contract, must be given its usual and ordinary meaning, unless it is apparent from a reading of the whole instrument that a different or special meaning was intended, or is necessary in order to avoid an absurd or unreasonable result." *Richards v. Metropolitan Life Ins. Co.,* 184 Wash. 595, 55 P. (2d) 1067.

In the absence of evidence to the contrary, the parties to a contract of insurance will be presumed to have intended the words and terms of the contract as they are ordinarily understood by the average man. *Kane v. Order of United Commercial Travelers of America,* 3 Wn. (2d) 355, 100 P. (2d) 1036.

The word "hospital" is defined in Webster's New International Dictionary (2d ed., 1949), Unabridged, as:

"n. . . . 3.a An institution or place in which patients

or injured persons are given medical or surgical care, often in whole or in part at public expense or by charity; . . . "

"Convalescent" is defined by the same authority as:

"n. One recovering from sickness. adj. a. Recovering from sickness or debility; partially restored to health or strength. b. Of or pertaining to convalesence or convalescents."

The relatively few cases in which the word hospital has been defined have generally followed the dictionary definition. See *McNichols v. City & County of Denver,* 120 Colo. 380, 209 P. (2d) 910, and cases cited therein. The charitable character of a hospital as generally understood has been emphasized in the following cases: *In re Cohen's Estate,* 58 N. Y. S. (2d) 924; *In re Pelton's Will,* 190 Misc. 624, 74 N. Y. S. (2d) 743.

■ Even though the Valley View Convalescent Home furnished respondent wife with the same facilities and the same care that she had at the Deaconess Hospital, that fact standing alone does not constitute the Valley View Convalescent Home a "hospital" as the word is used in the contract of insurance. And where, as in this case, the insurer has provided in its policy that "the word hospital as used in this policy shall not include a rest, convalescent or nursing home" there can be no room for construction of the contract. The Valley View Convalescent Home was in fact, as well as in name, a convalescent home.

The trial court's decision was based on the proposition that the insurer should have defined the term "hospital" in the policy as meaning a general hospital where surgery and obstetrics are practiced, and, since appellant failed to do so, the rule of strict construction against the insurer should be applied.

■ The rule that contracts of insurance will be construed in favor of the insured and most strongly against the insurer should not be permitted to have the effect of making a plain agreement ambiguous and then construing it in favor of the insured. *Hamilton Trucking Service v. Automobile Ins. Co. of Hartford, Connecticut,* 39 Wn. (2d) 688, 237 P. (2d) 781. The trial court, therefore, erred in concluding

that the Valley View Convalescent Home was a hospital within the policy coverage.

■ Respondents urge, however, that the exception or limitation placed upon the word "hospital" is void for failure of appellant to comply with the provision of chapter 79, § .20.02 (6), p. 402, Laws of 1947 (Rem. Supp. 1947, § 45.20.02 (6), repealed by chapter 229, § 34, p. 724, Laws of 1951). This contention, not having been made in the trial of the case, may not be made in this court. *Merlin v. Rodine,* 32 Wn. (2d) 757, 203 P. (2d) 683, and cases cited therein.

The judgment is, therefore, reversed and the cause remanded with instructions to enter judgment for respondents in the sum of $211.30, with interest from April 1, 1951.

Since the amount of appellant's tender, other than for costs, is less than the amount of respondent's judgment, respondents are entitled to their taxable costs in the superior court. RCW 4.84.120.

Appellant will recover costs in this court.

MALLERY, HILL, HAMLEY, FINLEY, WEAVER, and OLSON, JJ., concur.

GRADY, J. (dissenting)—I do not think the situation presented by this record warrants the holding that the Valley View Convalescent Home was not a "hospital" within the contemplation of the insurance policy. The policy on its first page provides indemnity for "Hospital and Surgical Expenses," "Hospital Residence Indemnity," and "Hospital Expense Benefits." This is followed by a statement and schedule of payments which the insurance company promised to make for each day the insured "because of sickness or accidental bodily injury covered by this policy shall be necessarily confined as a resident bed patient within any hospital upon the advice of, and regularly attended by, a legally qualified physician or surgeon"; also that the company will pay the amount of expense actually incurred during the period of such hospital confinement for certain named items. Following these statements is a schedule of hospital service, and on the same page is an exception from

the general coverage in cases of pregnancy, childbirth, etc. Reference is made to the latter being provided for in part two of the policy. This part immediately follows on the next page under a printed heading readily observed by a casual examination. All of this is followed by a very lengthy schedule covering two and one-half pages of the policy.

Nothing is said about any exceptions to general hospital coverage until one reaches the fourth page. On this page is found in rather large bold-faced print a limitation with reference to hospitals operated by the veterans administration and with reference to the rate to be charged those under eighteen years of age. Tucked away among some other and much smaller printing is found the following: "The word hospital as used in this policy shall not include a rest, convalescent, or nursing home." The word "hospital" is neither underscored, italicized, nor in quotation marks so as to call attention to a restricted use of that word or one different to what one would gather from reading the opening part or first page of the policy. Statutes in many states protect insured parties from such deception. 44 C. J. S. 1029, Insurance, § 254.

The insured parties had the right to assume from what they would read on the front page and on the outside of the policy when folded, that if by reason of sickness or accident either of them had to be taken to a place where sick or injured persons were treated by a physician or surgeon, they would be indemnified according to the policy schedule. It would make no difference to them when they bought indemnity insurance whether the place was designated as a "hospital" or by some other word or words. They were interested in being reimbursed for what they paid the place or institution that took them in and gave needed and usual hospital service while under their doctor's care.

Mrs. Rew was attended by a physician, who caused her to be taken to the Deaconess Hospital in Spokane. The hospital was somewhat crowded. The physician later concluded to remove his patient to another place where she would receive the same class of service as rendered by the Deaconess Hos-

pital, and while she was there she continued to receive the same service and was attended by her physician.

Although the Home was licensed and was denominated a "convalescent home," it rendered the service the cost of which the policy protected and for which the premium was paid. Whether the place of service is called a "hospital" or something else is immaterial. The kind of service that is given is an important factor in determining whether the place or institution is a hospital and furnishes an important guide in determining liability on the part of an insurer. Mrs. Rew was necessarily confined in both the Deaconess Hospital and the Valley View Convalescent Home as "a resident bed patient" and "upon the advice of, and regularly attended by, a legally qualified physician and surgeon." This met the terms of the policy coverage. It is not necessary to indulge in any refined definition of words or distinctions between different kinds of institutions.

The judgment should be affirmed.

SCHWELLENBACH, C. J., concurs with GRADY, J.

---

January 27, 1953. Petition for rehearing denied.