[No. 40-40236-3. Division Three. March 26, 1970.]

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, *Appellant,* v. CHESTER PHILLIPS *et al., Respondents.*

170

Robert A. Southwell (of Malott & Southwell), for appellant.

Lawrence Monbleau (of Cashatt, Williams, Connelly & Rekofke) and W. Walters Miller (of Miller & Sackmann), for respondents.

Evans, C. J.—Appellant, State Farm Mutual, brought an action for declaratory judgment, claiming its policy did not cover an accident that occurred March 10, 1965 between respondents, Chester Phillips (insured) and Clark Phillips, his son. State Farm Mutual appeals from a judgment to the contrary.

Appellant claims 41 assignments of error. All are directed to the findings of fact and conclusions of law entered by the trial court, and to the refusal of the trial court to enter appellant's proposed findings of fact and conclusions of law. Appellant concedes, however, that all assignments of error relate to and ultimately narrow down to one principal question: At the time of the accident was the son Clark Phillips a member of the family of and residing in the same household as his father Chester Phillips, within the meaning of the following exclusion in the named insured's policy:

This insurance does not apply under:

. . .

(i) coverage A, to bodily injury to the insured or any member of the family of the insured residing in the same household as the insured; . . .

The coverage under the insuring agreement provided:

COVERAGES A and B — (A) Bodily Injury Liability and (B) Property Damage Liability (1) To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of (A) bodily injury sustained by other persons, and (B) property damage, caused by accident arising out of the ownership, maintenance or use, including loading or unloading, of the owned automobile; and to defend any suit against the insured alleging such bodily injury or property damage and seeking damages which are payable hereunder even if any of the allegations of the suit are groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient.

There is no material dispute as to the facts. Respondent, Chester Phillips, is a lifelong resident of Adams County. For the past 25 years or more he has operated a combination wheat farm and cattle ranch located just outside the city limits of Lind. Since 1945 these operations for the most part have required the full-time assistance of at least one hired hand on a year-round basis, who, as a condition of employment, lived on the premises.

The buildings on the premises consist of a house which Chester Phillips occupied with his wife, daughter, and son Clark. There is also a machine shed and a repair shop, but no bunkhouse or similar facility separate and apart from the house. The Phillipses' home is the only place where quarters are available for occupancy by live-in hired help.

From 1946 to 1963 Chester Phillips employed a total of four hired hands. As a condition of their employment they were required to live on the premises and to occupy a room in the Phillipses' home. This conformed to a long standing general custom and practice prevailing in the Adams

County area on farms and ranches where no bunkhouses or separate housing facilities are available. In such situations, hired hands are afforded room and board in their employers' homes, enjoying full and unrestricted use thereof to the same extent as members of their employers' families. All four hired hands employed by Chester Phillips during the period from 1946 to 1963 occupied a room in his home, took their meals at the same time and table as did the Phillips family, and enjoyed the same unrestricted use of the Phillipses' home and its conveniences as did its permanent occupants. Laundry, ironing and such mending and the like as was necessary was attended to by Mrs. Phillips at no charge to her husband's hired help.

In 1961 respondent Clark Phillips graduated from high school. Following his graduation he was employed by his father on a full-time basis as a laborer on the farm. Clark was paid $10 per day. As additional compensation for his services he was furnished room and board in his father's home in the same manner as other employees.

From the beginning, Chester Phillips carried Clark as an employee on his payroll records, made the necessary deductions from his wages for social security and federal income tax, and carried an insurance policy covering injuries sustained by Clark and other employees in the scope of their employment. During his employment Clark was fully self-supporting and paid all expenses incidental to his own maintenance, including the medical expenses arising from injuries he sustained in the accident from which this action stems. He worked regular hours as fixed by his father, did such work as he was directed to do, and was otherwise treated in the same manner as other hired hands.

Clark had resided in his father's home all his life. It was his home and at no time in his life had he resided away from this home. He had never been married; nor had he been in the armed services. He received his mail at his father's post office box and had been doing this all his life. His legal residence for the purpose of selective service registration was the same as that of his father. He had free use

of the family home and was not restricted to any part of the house; he took his meals with the family in the same manner as when he was going to high school; and he enjoyed the same use of the house as when he was in school. His mother was in the habit of washing and mending his clothes, just as she did when he was attending high school, and her attitude toward him as a son was no different than it was when he was in school. He was not excluded from any family gatherings, and was treated as a member of the Phillips family the same as was his sister. His father would give fatherly advice to Clark, if he was asked. Such was the relationship between Chester Phillips and his son, Clark, when the former applied to appellant for an automobile liability insurance policy.

After issuance of the policy in question, and on March 10, 1965 while Chester Phillips was operating the vehicle described in appellant's policy, he collided with a motorcycle driven by his son Clark on a public street in the business area of Lind. Clark was severely injured. He was 23 years of age. Neither Chester Phillips nor the son Clark knew the other was in the area at the time. In fact, Chester Phillips was unaware it was Clark he had struck until after the collision.

Chester Phillips thereafter gave appellant notice of the accident. After investigation of the facts and circumstances, appellant by letter directed to Chester Phillips declined coverage, resting its denial on the basis that "at the time of the accident your son, Clark Phillips, was a resident of your household and a member of your family."

Two years later Clark Phillips commenced an action against his father in the Adams County Superior Court. Appellant, State Farm Mutual, thereupon commenced this action in the same court, pursuant to the provisions of RCW 7.24.010 *et seq.*, the Uniform Declaratory Judgment Act, seeking an adjudication that its policy did not afford coverage for the accident on March 10, 1965, and it had no obligation to defend any litigation arising from it, thus

invoking the exclusionary effect of paragraph (i), *supra,* of its policy.

The trial court entered findings of fact, including finding of fact 14, which provided "At all times since said employment agreement was entered into the relationship between Chester Phillips and Clark Phillips has been that of an employer and employee, and not that of members of the same family residing in the same household."

Thereafter, judgment was entered declaring that appellant's policy covered the accident, and appellant was obligated to defend the action commenced by Clark in Adams County Superior Court and pay all sums adjudged due and owing as damages arising from that accident, except as limited by other terms of the policy.

Appelllant contends the uncontroverted facts establish as a matter of law that Clark was a member of the family of the insured, residing in the same household of the insured within the meaning of the policy provisions, and retained that same status after he was employed by his father on a full-time basis. Appellant argues creation of the relationship of employer-employee did not destroy the family relationship that existed during all of Clark's life; he was more than a mere farm employee; and the normal relationship of father and son still existed and Clark remained the natural object of his father's affections.

On the other hand, respondents took the position, and the trial court found, that the exclusionary clause relied on by appellant is ambiguous and inapplicable to an employee, whether or not related to appellant's insured, who, as a condition or requirement of his employment is obliged to become or remain a member of his employer's household. Respondent contends the word "family" has no fixed or unalterable meaning; that it is a term connoting a variety of meanings and relationships, a circumstance that has led some courts to conclude, as did the trial court in this case, that the so-called family-exclusion clause was ambiguous. In support of this contention respondent cites *State Farm Mut. Auto. Ins. Co. v. Thompson,* 372 F.2d 256, 258 (9th Cir.

1967); *Umbarger v. State Farm Mut. Auto. Ins. Co.,* 218 Iowa 203, 254 N.W. 87, 89 (1934); *State Farm Mut. Auto. Ins. Co. v. Hannah,* 277 Ala. 32, 166 So. 2d 872 (1964); *State Farm Mut. Auto. Ins. Co. v. Pennington,* 215 F. Supp. 784 (D.C. Ark. 1963), *affirmed* 324 F.2d 340 (8th Cir. 1963); *Fruchtman v. State Farm Mut. Auto. Ins. Co.,* 274 Minn. 54, 142 N.W. 2d 299 (1966).

Based upon the premise that the provisions of the exclusionary clause are ambiguous, respondent contends this ambiguity entitles respondents to the benefit of two well-established rules relating to the construction of an insurance policy exclusionary clause: first, where the provisions of a policy of insurance are capable of two meanings, or are fairly susceptible of two different constructions, that meaning and construction most favorable to the insured must be applied even though the insurer may have intended another meaning (citing *Selective Logging Co. v. General Cas. Co., of America,* 49 Wn.2d 347, 301 P.2d 535 (1956)); second, exclusionary clauses of insurance policies are to be strictly construed against the insurer (citing *Thompson v. Ezzell,* 61 Wn.2d 685, 379 P.2d 983 (1963)).

Respondent urged, and the trial court found, the mere fact of a blood relationship between Chester Phillips and Clark Phillips, who occupied and shared a common household, was not sufficient to establish the family relationship (citing *State Farm Mut. Auto. Ins. Co. v. Pennington, supra*). Given the meaning most favorable to appellant's insured, the term "family" is limited in its scope to an aggregate of individuals related by ties of blood or marriage who share a common household, subject to the control of its head—a parent in the case of children—who are dependent on that head in whole or in part for their support. Respondents urged, and the trial court agreed, there are at least two elements essential to establish the existence of a family that are lacking in this case, namely, parental control by Chester Phillips over his son, Clark, and dependency for support by Clark on his father, Chester Phillips.

The basic premise upon which the trial court made its findings, conclusions and judgment, was that the term "family" as used in the policy is ambiguous. Respondent contends this issue was a question of fact and that the findings of fact entered by the trial court will not be disturbed on appeal if they are supported by substantial evidence. This rule, however, does not apply to construction of language in an insurance policy. In *Rew v. Beneficial Standard Life Ins. Co.,* 41 Wn.2d 577, 250 P.2d 956, 35 A.L.R.2d 891 (1952), a case involving the construction of language in an insurance policy, our Supreme Court, in determining the question was one of law, stated:

> Appellant insurer makes six assignments of error, but concedes that they present but one question: Was the Valley View Convalescent Home a hospital within the coverage of the policy? *The question is one solely of law.*

(Italics ours.)

The court in that case also stated, at page 581:

> This court has laid down and followed the rule that:
>
> "A policy of insurance is a contract, and its language, like that of any other contract, must be given its usual and ordinary meaning, unless it is apparent from a reading of the whole instrument that a different or special meaning was intended, or is necessary in order to avoid an absurd or unreasonable result." *Richards v. Metropolitan Life Ins. Co.,* 184 Wash. 595, 55 P.(2d) 1067.
>
> In the absence of evidence to the contrary, the parties to a contract of insurance will be presumed to have intended the words and terms of the contract as they are ordinarily understood by the average man. *Kane v. Order of United Commercial Travelers of America,* 3 Wn.(2d) 355, 100 P.(2d) 1036.

And again, at page 582, the court stated:

> The rule that contracts of insurance will be construed in favor of the insured and most strongly against the insurer should not be permitted to have the effect of making a plain agreement ambiguous and then construing it in favor of the insured. *Hamilton Trucking Service v. Automobile Ins. Co. of Hartford, Connecticut,* 39 Wn.(2d) 688, 237 P.(2d) 781. The trial court, therefore,

erred in concluding that the Valley View Convalescent Home was a hospital within the policy coverage.

See also, *Lampson Equip. Rental & Sales, Inc. v. West Pasco Water System, Inc.,* 68 Wn.2d 172, 412 P.2d 106 (1966).

 The language in this particular exclusion:

This insurance does not apply under:

. . .

(i) coverage A, to bodily injury to the insured or any member of the family of the insured residing in the same household as the insured; . . .

has never been construed by the Supreme Court of this state. However, it has been construed many times by appellate courts of other states. Those decisions supporting respondents' contention have been cited above and appear to represent the minority view. The majority rule upholds the validity and application of exclusionary provisions in factual situations substantially similar to the facts in the present case. See 50 A.L.R.2d 108, at 120; 50 A.L.R.2d 110, later case service. A review of the numerous cases therein cited leads this court to the conclusion that in considering the construction of any exclusionary clause in a liability insurance policy, the purpose and intent of the insurer in inserting the particular clause must be considered. The exclusion in question is a so-called "household or family exclusionary clause", the purpose of which is not only to protect insurers from collusion which might possibly arise in intrafamily suits but also to protect them from the natural tendency of one insured to strengthen or enlarge the case against him when it involves members of his household and family. There is a natural disposition to favor those in one's household and close members of one's family. The practical impossibility facing an insurer in defending such an action is readily apparent, and explains why this type of exclusion is inserted in a policy. The exclusion, when read in connection with the Insuring Agreement I, Coverage A, that insures against bodily injuries sustained

by *other persons,* clearly indicates there was no intent to provide coverage for injuries to insured or to members of the family of the insured residing in the same household as the insured.

The identical exclusionary language contained in the policy was most recently considered in *State Farm Mut. Auto. Ins. Co. v. Xaphes,* 384 F.2d 640 (2d Cir. 1967). There the court held that the policy contained provisions that excluded from coverage bodily injuries to insured or any member of her household. Insured's mother, who was a member of insured's household, was killed while riding in insured's automobile at the time it was being driven by a friend of insured with insured's permission. The court held the insurer was not obligated to defend a suit brought by the administrator of the mother's estate against the driver. This was a case of first impression in Vermont. The court, in arriving at its decision, stated at page 641:

> However, the policy before us is not ambiguous; its provisions as quoted above were carefully drawn as a result of court decisions and clearly indicate that it was not intended to require State Farm to defend Wesson in the situation here presented. The insurer agreed to defend the insured and the additional insured only against claims arising out of injuries sustained by other parties. The company did not undertake to pay for bodily injuries suffered by the insured and members of the insured's household.

> To make clear this limitation on its responsibility the insurer drafted the exclusion quoted above and placed it in the policy. The language of that exclusion appears to us to be clear and unambiguous—members of the household of the named insured may not recover. We note that the policy could have contained a "severability of interest" clause that directs each insured to be treated separately with respect to the exclusions. But this policy did not contain such a clause—to read it in, and include this claim because Clara Brown was not part of Wesson's household as the district court would do, is to transform a liability policy into an accident policy.

> Since the insurer's reading of the policy to exclude this claim is accepted by substantially all prior cases, we may

assume that that interpretation was reflected in the premium charged. See, e.g., Johnson v. State Farm Mutual Automobile Ins. Co., 252 F.2d 158 (8 Cir. 1958); Great American Ins. Co. v. State Farm Mutual Automobile Ins. Co., 412 Pa. 538, 194 A.2d 903 (1963); State Farm Mutual Automobile Ins. Co. v. Cocuzza, 91 N.J. Super. 60, 219 A.2d 190 (1966). It may be, as appellees argue, that the risk of collusion that justified the exclusion of intrafamily suits does not operate with the same force in the situation here, when a member of the family is suing a friend of the named insured. But the exclusion was not designed for the sole purpose of avoiding collusive claims —it was drawn to make clear that the insurer's obligation was limited to pay for injuries sustained by *persons other than* the insured and members of her household. The clear language of the exclusion should not be circumvented because it may be argued that collusion is less likely in cases such as this.

(Footnote omitted.)

Appellant's same exclusion, construed with the same insuring agreement as we have in this case, was held to apply in *State Farm Mut. Auto. Ins. Co. v. Cocuzza*, 91 N.J. Super. 60, 219 A.2d 190, 193 (1966), a case of first impression in New Jersey. The facts were substantially the same as those in *State Farm Mut. Auto. Ins. Co. v. Xaphes, supra.* The court stated, at page 65:

Exclusionary clauses must be examined and interpreted in the light of their design and intent as well as in view of the objects and purposes of the policy. *Capece, supra* [88 N.J. Super. 535, 212 A.2nd 863]. The purpose of the relevant part of the policy in question was to provide liability coverage. *Great American Ins. Co. v. State Farm Mutual Auto Ins. Co., supra.* The use of the word "other" in insuring agreement (1) under coverage A makes this clear. The exclusion of the named insured or any member of his family from recovery under clause (g) is in accord with this interpretation. It clearly appears that the parties intended to exclude the named insured and members of his family residing in the same household from recovery on the policy of insurance for any injuries sustained.

The Georgia court approved the application of the exclusion in question in *Teems v. State Farm Mut. Auto. Ins. Co.,* 113 Ga. App. 53, 147 S.E.2d 20 (1966), where a mother and father obtained a judgment against their 18-year-old daughter for injuries to the mother while she was a passenger in an automobile operated by the daughter. The daughter was living in the residence of her mother and father, together with her younger sister, and they had all lived there for about 4 years. The daughter occupied one of three bedrooms in the house. For a period of 2 years following graduation from high school she worked, paid rent to her father at the rate of $5 per week, and paid for a telephone extension in her room. She was free to do as she pleased, could go where she wanted, and was not disciplined or told by her father what to do. She owned her own automobile, bought her own clothes, and paid her own medical bills and expenses. The Georgia court held the mother and father were members of the family of the insured daughter, residing in the same household as the insured, and applied the exclusion to deny coverage. The exclusion in question was the same as that in the present case.

The Wisconsin case of *Goller v. White,* 20 Wis. 2d 402, 122 N.W.2d 193 (1963), concerned an exclusion in a farm liability policy, excluding bodily injury to "(1) any insured or any member of his family residing in the household of any insured . . ." The court found the exclusion applied and affirmed an order granting summary judgment. The court determined a boy who was placed in the named insured's licensed foster home was a "member of the family" of the named insured with the definition of "insured" in the policy in question. At the time of the accident the minor plaintiff was working for his foster father and contended he was afforded coverage as an employee. Notwithstanding the fact he was employed by his foster father, the court found he was a member of the family of his foster father.

A leading case representative of the majority rule, construing this exact exclusion, is *Tomlyanovich v. Tomlyanovich,* 239 Minn. 250, 58 N.W.2d 855, 50 A.L.R.2d 108,

decided in 1953. In that case plaintiff and defendant were brothers. Defendant was 29 years of age and the plaintiff was 27. Both were unmarried and resided in the family home. The home and all furnishings were owned by their father. The mother prepared the meals and all members of the family ate at the same table when they were home on time. They all received their mail in a common mailbox. The mother did the housework and laundry for all members of the family. At the time of the accident defendant was employed as a brakeman and plaintiff was unemployed. Both plaintiff and defendant paid their mother and father for board, room and laundry. Plaintiff and defendant each had a separate bedroom but otherwise had free use of the house. Plaintiff was riding in defendant's car, driven by defendant at the time of the accident. The Minnesota court found that the plaintiff brother was a member of the family of the insured brother, residing in the same household as the insured, and the exclusionary clause applied. The court exhaustively reviewed the cases up to that time bearing on this point, and in its decision pointed out the obvious purpose of the clause was to except the insurer from liability to those persons to whom the insured, on account of close family ties, would be apt to be partial in case of injury.

In *Tomlyanovich v. Tomlyanovich*, 239 Minn. at 259, the Minnesota court quoted from a prior Minnesota case with respect to the distinction between the words "household" and "family":

> With respect to the distinction between the words "household" and "family," we said, [in *Engebretson v. Austvold*] (199 Minn. 402, 271 N.W. 810):
>
> "There is not much disagreement in the definitions of 'household,' whether they emanate from judges or lexicographers. The word is synonymous with 'family' but broader, in that it includes servants or attendants, 'all who are under one domestic head; persons who dwell together as a family.' "

And in the same case, at page 255, the court also quoted from a 6th circuit court case as follows:

In Ocean Acc. & Guart. Co. Ltd. v. Schmidt, (6 Cir.) 46 F. (2d) 269, 270, the court said:

"In Arthur v. Morgan, 112 U.S. 495, 499, 5 S. Ct. 241, 243, 28 L. Ed. 825, the court said: 'Persons who dwell together as a family constitute a "household." ' . . . *We do not doubt that a son living under the parental roof is a member of the household even though he has reached his majority and supports himself, . . . .*" (Italics supplied.)

This being a question of first impression in this state we accept the majority rule as expressed in *Tomlyanovich v. Tomlyanovich, supra,* as being the better reasoned and sounder rule, and hold as a matter of law that Clark Phillips was a member of the family and a resident of the same household as the named insured within the meaning of the provisions of the exclusionary provision (i).

In addition to urging a lack of coverage on the basis that Clark was a member of Mr. Phillips' family and a resident of his household, appellant claims Clark was also an insured as defined in its policy for whom no coverage was afforded. Appellant made no such claim at the time coverage was initially denied, failed to allege Clark's status as an insured in its complaint at the time this action was commenced, and neglected to raise this issue in the trial court.

By reason of appellant's failure to raise the issue of whether Clark was an insured under its policy, appellant is foreclosed from raising it for the first time in this court. *Daniels v. Pacific N.W. Bell Tel. Co.,* 1 Wn. App. 805, 643 P.2d 795 (1970), *Matthias v. Lehn & Fink Prod. Corp.,* 70 Wn.2d 541, 424 P.2d 284 (1967).

Judgment reversed, and remanded for entry of judgment for plaintiff in accordance herewith.

GREEN and MUNSON, JJ., concur.