[No. 7313-3-I.  Division One.  April 14, 1980.]

MUTUAL OF ENUMCLAW INSURANCE COMPANY, *Respondent*,
v. MAURA McGAHAM WISCOMB,
*Appellant.*

*Faith Enyeart,* for appellant.

*Peter Jay Visser* and *LeCocq, Simonarson, Visser & Johnson,* for respondent.

DURHAM–DIVELBISS, J.—Maura Wiscomb appeals from a declaratory judgment denying her coverage under an automobile liability insurance policy because of the family or household exclusion clause.

The facts are undisputed. Maura Wiscomb was seriously injured in a collision between a motorcycle she was riding and an automobile driven by her husband. Both vehicles were insured by Mutual of Enumclaw (Enumclaw), which provided both liability and uninsured motorist coverage.

Maura Wiscomb commenced a lawsuit against her husband, alleging that she suffered personal injuries as a result of his negligence. Her husband tendered the defense to Enumclaw, which refused to defend him, contending that it was relieved of its obligation under the family or household exclusion clause of the policy, which stated:

This policy does not apply . . . to bodily injury to the insured or any member of the family of the insured residing in the same household as the insured.

Maura Wiscomb appeals from a declaratory judgment relieving Enumclaw of any obligation to defend or pay damages.

This case presents a question the appellate courts have not yet directly addressed in this state: Is the family or household exclusion clause void because it violates public policy?

The family exclusion clause and the common–law doctrine of intrafamily immunity share a common rationale: the avoidance of fraud and collusion in litigation. *See generally* Annot., 46 A.L.R.3d 1024 (1972). Thus, to answer the

question presented above, we must first trace the development of the common–law rule.

Historically, suits between husband and wife were strictly prohibited. One court explained:

> At the common law there was a unity between husband and wife, and . . . for all practical purposes, the husband was the unit. The legal rights of the wife were merged in the husband, and were subject to the direction and control of the husband, but neither husband nor wife could sue the other.

*Schultz v. Christopher,* 65 Wash. 496, 498, 118 P. 629 (1911). However, in recent years, the doctrine of interspousal immunity has been eroded in several important respects. *See, e.g., Mattinson v. Mattinson,* 128 Wash. 328, 222 P. 620 (1924) (invasion of separate property rights); *Johnson v. Ottomeier,* 45 Wn.2d 419, 275 P.2d 723 (1954) (action against the personal representative of a deceased spouse); *Goode v. Martinis,* 58 Wn.2d 229, 361 P.2d 941 (1961) (intentional tort of rape between parties legally separated but awaiting divorce); *Manion v. Pardee,* 79 Wn.2d 1, 482 P.2d 767 (1971) (tort committed prior to marriage).

Finally, in 1972, the State Supreme Court in *Freehe v. Freehe,* 81 Wn.2d 183, 500 P.2d 771 (1972) clearly and decisively abolished the doctrine of interspousal immunity. The court considered all of the historical reasons for the common–law doctrine and expressly rejected each. These reasons included: (1) the supposed unity of husband and wife, (2) a policy of preserving the tranquility in the home, (3) the argument that the injured spouse has an adequate remedy through the criminal and divorce laws, (4) a concern that interspousal lawsuits would flood the courts with a burdensome number of trivial matrimonial disputes, (5) the desirability of discouraging collusion and fraud where one or both spouses carries liability insurance, (6) the absence of statutory sanctions for intrafamily torts, and (7) the contention that a tort–feasor spouse would benefit from his or her wrongdoing because of community property principles.

In addition to dismissing the traditional reasons upon which the common-law doctrine was based, *Freehe* found the rule contrary to public policy as expressed in RCW 26.16.150, which provides that "[e]very married person shall hereafter have the same right and liberty to acquire, hold, enjoy and dispose of every species of property, and to sue and be sued, as if he or she were unmarried."

> [T]he statute means what it says and . . . to the extent that a spouse has an individual interest in compensation for personal injuries, the statute allows him or her to bring suit against the tort-feasor spouse.

*Freehe v. Freehe, supra* at 190. The court then went on to conclude at 192:

> We are cognizant of the long-standing nature of the common-law rule of interspousal tort immunity. But we find more impelling the fundamental precept that, absent express statutory provision, or compelling public policy, the law should not immunize tort-feasors or deny remedy to their victims. With this in mind, we have reviewed the stated reasons for the common-law rule, and have found all of them to be insufficient. Therefore, the rule of interspousal disability in personal injury cases is hereby abandoned.

This conclusion is consistent with our position in related areas, such as a minor's right to recover damages from injuries sustained by reason of a parent's negligence. In *Borst v. Borst,* 41 Wn.2d 642, 251 P.2d 149 (1952), the court rejected the common-law prohibition against intrafamily suits where gross negligence was claimed. In discussing the "fraud and collusion" justification, particularly where liability insurance was present, the court stated:

> The courts may and should take cognizance of fraud and collusion when found to exist in a particular case. However, the fact that there may be greater opportunity for fraud or collusion in one class of cases than another does not warrant courts of law in closing the door to all cases of that class. Courts must depend upon the efficacy of the judicial processes to ferret out the meritorious from the fraudulent in particular cases.

*Borst v. Borst, supra* at 653.

█ It is clear that the public policy of this state prohibits intrafamily immunity. We must then consider if an insurance company may privately contract to exclude coverage of claims between family members.

Enumclaw argues that *United Pac. Ins. Co. v. McCarthy,* 15 Wn. App. 70, 546 P.2d 1226 (1976) provides a basis for finding the family or household exclusion clause to be valid. While the court in *McCarthy* at 74 commented in passing that "[h]ousehold or family exclusionary clauses are customary in automobile policies and their propriety is judicially sanctioned," it did not discuss the clear public policy enunciations found in *Freehe* or *Borst.* In a narrow ruling, the *McCarthy* court held that exclusion of a family member under that particular clause would not render him eligible to proceed under uninsured motorist coverage. Enumclaw further relies on *State Farm Mut. Auto. Ins. Co. v. Phillips,* 2 Wn. App. 169, 467 P.2d 189, 46 A.L.R.3d 1013 (1970) to support its claim that the exclusion clause has been approved in this state. *Phillips* did not discuss the question addressed here, but rather was limited to a determination of whether the claimant there fell within the definition of "a member of the family."

Other jurisdictions that have considered the issue have reached conflicting results. *See generally* Annot., 46 A.L.R.3d 1024 (1972). The family or household exclusion clause has been upheld because of the state's policy supporting interspousal immunity, *see, e.g., State Farm Mut. Auto. Ins. Co. v. Leary,* 168 Mont. 482, 544 P.2d 444 (1975), or because the clause did not prevent suit between spouses but only prevented recovery from the insurance company. *See, e.g., State Farm Fire & Cas. Co. v. Peckham,* 74 Mich. App. 551, 254 N.W.2d 575 (1977). We find these cases unpersuasive. Other courts have held that the family or household exclusion clause is contrary to public policy as expressed in the state's financial responsibility laws. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Sivey,* 404 Mich. 51, 272 N.W.2d 555 (1978); *Estate of Neal v. Farmers Ins. Exch.,* 93 Nev. 348, 566 P.2d 81 (1977); *Hughes v. State*

*Farm Mut. Auto. Ins. Co.,* 236 N.W.2d 870 (N.D. 1975); *Stevens v. State Farm Auto. Ins. Co.,* 21 Ariz. App. 392, 519 P.2d 1157 (1974).

Although many of the cases cited earlier in this opinion discuss the presence of insurance contracts, they do not specifically answer the question before us. *See, e.g., Freehe v. Freehe, supra* and *Borst v. Borst, supra.* We must, therefore, turn to a general consideration of private insurance contracts vis–a–vis public policy.

■ Traditionally, insurance contracts have been considered to be private contracts between the parties. *Sears, Roebuck & Co. v. Hartford Accident and Indem. Co.,* 50 Wn.2d 443, 313 P.2d 347 (1957); *Vandivort Constr. Co. v. Seattle Tennis Club,* 11 Wn. App. 303, 522 P.2d 198 (1974). As private contractor, the insurer was permitted to limit its liability unless inconsistent with public policy or statute. *Trinity Universal Ins. Co. v. Willrich,* 13 Wn.2d 263, 124 P.2d 950, 142 A.L.R. 1 (1942); 7 S. Williston, *Contracts* § 900, at 28 (3d ed. 1963); 7 G. Couch, *Cyclopedia of Insurance Law* § 36:49 (2d ed. 1961); 44 C.J.S. *Insurance* § 241 (Supp. 1979). As compared to other types of insurance,

> Automobile insurance has taken an important position in the modern world. It is no longer a private contract merely between two parties. The greater part of litigation in our trial courts is concerned with claims arising out of property damage, personal injury or death caused by operation of motor vehicles. The legislatures of all our States have recognized the hazards and perils daily encountered and as a result have enacted various pieces of legislation aimed at the protection of the injured party. . . . That the general welfare is promoted by such laws can be little doubted. Government and the general public have an understandable interest in the problem. Many persons injured and disabled from automobile accidents would become public charges were it not for financial assistance received from the insurance companies.

*Simmon v. Iowa Mut. Cas. Co.,* 3 Ill. 2d 318, 322, 121 N.E.2d 509, 511 (1954), quoted in *Shingleton v. Bussey,* 223 So. 2d 713, 716 (Fla. 1969). Because of the important policy

considerations inherent in excluding coverage to large classes of persons, courts strictly scrutinize exclusions to see whether they comport with public policy. *See Touchette v. Northwestern Mut. Ins. Co.,* 80 Wn.2d 327, 494 P.2d 479 (1972).

In discerning a particular public policy, the courts consider that "[t]he factors upon which any public policy is based—the relevant factual situation and the thinking of the times—are not static." *Pierce v. Yakima Valley Memorial Hosp. Ass'n,* 43 Wn.2d 162, 166, 260 P.2d 765 (1953). Further,

> Public policy is a term not easily defined. Its significance varies as the habits and needs of a people may vary. It is not static and the field of application is an ever increasing one. A contract, or a particular provision therein, valid in one era may be wholly opposed to the public policy of another. . . . Courts keep in mind the principle that the best interests of society demand that persons should not be unnecessarily restricted in their freedom to contract. But they do not hesitate to declare void as against public policy contractual provisions which clearly tend to the injury of the public in some way.

*Henningsen v. Bloomfield Motors, Inc.,* 32 N.J. 358, 161 A.2d 69, 94–95 (1960), quoted with approval in *Baker v. Seattle,* 79 Wn.2d 198, 200–01, 484 P.2d 405 (1961). *See also McCutcheon v. United Homes Corp.,* 79 Wn.2d 443, 486 P.2d 1093 (1971).

■ We are convinced that the strong public policy enunciated in *Freehe v. Freehe, supra* and society's interest in permitting injured victims of automobile accidents to recover against the tort–feasor, even if the tort–feasor is a member of the family or household, dictates that the exclusion clause in question be declared null and void as contrary to public policy. The rationale supporting the family exclusion clause has clearly been rejected in this state, and any attempt by an insurance carrier to privately restrict recovery must be prohibited. *See* Bland, *Family*

*Immunity and Household Exclusions in Washington,* 3
Wash. Trial Law. L.J. 13 (1979).

Our conclusion that the family or household exclusion
clause is contrary to public policy is consistent with the
provisions of the financial responsibility act, RCW 46.29,
which was intended

> for the benefit of owners and drivers of motor vehicles as
> a means of forestalling suspension of the license of the
> driver and of the registration of the vehicle and, more
> fundamentally, designed to give monetary protection to
> that ever changing and tragically large group of persons
> who, while lawfully using the highways themselves, suffer
> serious injury through the negligent use of those high-
> ways by others.

*LaPoint v. Richards,* 66 Wn.2d 585, 590, 403 P.2d 889
(1965). It is clear that an insurance policy containing a
family or household exclusion clause which is certified as
proof of financial responsibility does not provide the com-
prehensive protection required by statute and is not suffi-
cient to show future financial responsibility because it
would not insure "against loss from the liability imposed by
law for damages arising out of the ownership, maintenance
or use of such vehicle" as required by RCW 46.29.490(2)(b).
Further, an automobile liability policy in effect at the time
of the accident which contains a family or household exclu-
sion clause would not be sufficient to satisfy any judgment
obtained by a family member arising out of the accident
and, therefore, the driver–owner may be required to post a
security deposit under RCW 46.29.070 and 46.29.080.

Our holding that the family or household exclusion
clause is void as against public policy does not leave insur-
ers defenseless against fraudulent or collusive claims. The
established methods of detecting and discouraging fraud
can be applied to intrafamily claims without the effect of
denying coverage to bona fide claimants. *Borst v. Borst,
supra.* If an insurer demonstrates fraud or collusion in a
particular claim, the "cooperation clause" of the insurance
policy would relieve the insurer of liability under the policy.

14 G. Couch, *Cyclopedia of Insurance Law* § 51:170 (2d ed. 1965).

Reversed and remanded.

DORE and RINGOLD, JJ., concur.

Reconsideration denied May 15, 1980.

Review granted by Supreme Court August 15, 1980.