627 P.2d 311

**George PORTER, Plaintiff-Appellant,**

v.

**FARMERS INSURANCE COMPANY OF IDAHO, an Idaho Corporation, Defendant-Respondent.**

No. 13154.

Supreme Court of Idaho.

April 15, 1981.

John L. King of King & Morris, Boise, for plaintiff-appellant.

William J. Russell of Elam, Burke, Evans, Boyd & Koontz, Boise, for defendant-respondent.

BAKES, Chief Justice.

On April 29, 1975, Ethel Porter was riding in a pickup owned and operated by her husband George Porter. The pickup was struck broadside on the driver's side by DeWitt Hasbrouck's vehicle while George Porter was making a left turn. Mrs. Porter was injured in the accident and brought suit against DeWitt Hasbrouck for compensation. Mr. Hasbrouck in turn brought suit against George Porter as a third party defendant, seeking contribution on the theory that he was a joint tortfeasor. The respondent herein, Farmers Insurance Co., represented George Porter at the insistence of Mr. Porter's separate counsel, and filed a general denial to the third party complaint.

A jury trial was held and the verdict was in favor of Ethel Porter and against DeWitt Hasbrouck on Mrs. Porter's claim. The jury found no negligence on the part of Mrs. Porter. As to the third party claim, the jury found that George Porter was 80% negligent, and DeWitt Hasbrouck 20%. The court entered a judgment in favor of Ethel Porter and against DeWitt Hasbrouck in the total amount of $13,828.92 which has been satisfied. The court further entered a judgment in favor of DeWitt Hasbrouck and against George Porter in the total amount of $12,281.08. Mr. Hasbrouck, through his insurance company,

made demand on George Porter, who in turn made a demand on his insurance company, respondent Farmers Insurance Co., to pay the third party judgment. Farmers has refused to pay the judgment.

George Porter brought this declaratory judgment action against Farmers in an attempt to obtain payment of the judgment. At issue is the exclusionary clause in the policy of liability insurance issued by Farmers to George Porter, which states, "This policy does not apply . . . to the liability of any insured for bodily injury to (a) any member of the same household of such insured except a servant, or (b) the named insured." Another provision in the policy defined the "named insured" to include the insured's spouse. The court below granted summary judgment in favor of the defendant Farmers, on the ground that liability for injuries to Mrs. Porter was excluded from coverage because she was both the insured's spouse and a member of the insured's household.

■ The primary contention of the appellant Porter on appeal is that the exclusionary clause cited above conflicts with both the Idaho Motor Vehicle Safety Responsibility Act [hereinafter MVSRA], and public policy, and is therefore void and of no effect. He also contends that the insurance policy is ambiguous and should therefore be construed in favor of the insured to provide coverage for liability incurred due to Mrs. Porter's injuries.

The appellant argues that I.C. § 49–1521[1] of the MVSRA sets mandatory minimum

---

1. "49–1521. "MOTOR VEHICLE LIABILITY POLICY" DEFINED—EXPRESSED, PERMITTED AND IMPLIED PROVISIONS.—(a) A 'motor vehicle liability policy' as said term is used in this act shall mean an owner's or an operator's policy of liability insurance, certified as provided in section 49–1519 or 49–1520 as proof of financial responsibility, and issued, except as otherwise provided in section 49–1520, by an insurance carrier duly authorized to transact business in this state, to or for the benefit of the person named therein as insured.

"(b) Such owner's policy of liability insurance

"1. Shall designate by explicit description or by appropriate reference all motor vehicles with respect to which coverage is thereby to be granted; and

"2. Shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle or motor vehicles within the United States of America or the Dominion of Canada, subject to limits exclusive of interest and costs, with respect to each such motor vehicle, as follows:

standards of coverage for all motor vehicle liability policies effective in Idaho. In particular, he focuses on the language which states, "Such owner's policy of liability insurance . . . *[s]hall* insure the person named therein . . . against loss from the liability imposed by law for damages arising out of the ownership, maintenance or use of such motor vehicle . . . ." (Emphasis added.) The appellant further buttresses his argument by stating that since the statute explicitly excludes coverage for any liability subject to workmen's compensation law, the exclusion from coverage of liability to household members or a spouse must also be specifically provided for in the statute to be valid.

In order to properly address this issue, we must examine I.C. § 49–1521 in perspective with the MVSRA as a whole. The MVSRA has been adopted by at least thirty-three states,[2] and contains the following provision: "Uniformity of interpretation—This act shall be so interpreted and construed as to effect its general purpose to make uniform the laws of those states which enact it." I.C. § 49–1538. The language of the MVSRA, and the majority of the cases interpreting it, clearly indicate that the act has two main divisions, often known as the "safety responsibility law," I.C. § 49–1505 through 1516, and the "financial responsibility law," I.C. §§ 49–1517 through 1529, respectively. *See, e. g., Midsouth Insurance Co. v. Lewis,* 236 F.Supp. 739, 740–41 (W.D.La.1964); *Hoosier Casualty Co. of Indianapolis v. Fox,* 102 F. Supp. 214, 229–30 (N.D.Iowa 1952); *State Farm Mutual Automobile Ins. Co. v. Hub-*

*bard,* 272 Ala. 181, 129 So.2d 669, 675 (1971); *Johnson v. Universal Automobile Ins. Ass'n,* 124 So.2d 580, 586 (La.App.1960); *Havlick v. Bittner,* 272 Wis. 71, 74 N.W.2d 798, 800 (1956).

The two divisions have very distinct purposes. The "safety responsibility law" is *retrospective* in operation in that it requires the furnishing of collateral or proof of insurance, after a motor vehicle accident, so that victims of that accident may be assured of compensation. In contrast, the "financial responsibility law" operates *prospectively* to require, under certain circumstances, evidence of ability to meet possible judgments arising from the *future* ownership, maintenance, or operation of motor vehicles. *Hoosier Casualty Co. of Indianapolis v. Fox, supra.*

I.C. § 49–1521, the provision of the MVSRA which the appellant relies upon, is a part of the "financial responsibility law," governed initially by I.C. § 49–1517, which states:

"PROOF REQUIRED UPON CERTAIN CONVICTIONS.—(a) Whenever the commissioner, under any law of this state, *suspends or revokes the license of any person upon receiving record of a conviction or a forfeiture of bail,* the commissioner shall also suspend the registration for all motor vehicles registered in the name of such person, except that he shall not suspend such registration unless otherwise required by law, if such person has previously given or shall immediately give and thereafter maintain proof of

---

$10,000 because of bodily injury to or death of one (1) person in any one (1) accident and, subject to said limit for one (1) person $20,000 because of bodily injury to or death of 2 or more persons in any one (1) accident, and $5,000 because of injury to or destruction of property of others in any one (1) accident.

"(c) Such operator's policy of liability insurance shall insure the person named as insured therein against loss from the liability imposed upon him by law for damages arising out of the use by him of any motor vehicle not owned by him, within the same territorial limits and subject to the same limits of liability as are set forth above with respect to an owner's policy of liability insurance.
. . . .

"(e) Such motor vehicle liability policy shall not insure any liability under any workmen's compensation law as provided in title 72, nor any liability on account of bodily injury to or death of an employee of the insured while engaged in the employment, other than domestic, of the insured, or while engaged in the operation, maintenance or repair of any such motor vehicle nor any liability for damage to property owned by, rented to, in charge of or transported by the insured.
. . . ."

2. The states and pertinent code provisions are listed at Shepard's Federal & State Acts Cited by Popular Name, 674 (1979).

financial responsibility with respect to all motor vehicles registered by such person." (Emphasis added.)

I.C. § 49–1518 sets forth the methods of giving proof of financial responsibility required by I.C. § 49–1517, among which is the option to furnish a certificate of insurance according to the procedure set out in I.C. § 49–1519, or § 49–1520. It is at this point that I.C. § 49–1521 becomes effective in defining the requirements of motor vehicle liability policies. That section initially provides that, "A 'motor vehicle liability policy' as said term is used in this act shall mean an owner's or an operator's policy of liability insurance, *certified as provided in section 49–1519 or 49–1520 as proof of financial responsibility ....*" (Emphasis added.) It thus becomes apparent that the requirements of I.C. § 49–1521 apply only to policies of insurance that are selected as the preferred method of giving proof of financial responsibility following the suspension or the revocation of a driver's license due to a conviction or forfeiture of bail, and certified pursuant to I.C. § 49–1519 or 49–1520. Such is not the case here.

Although a small minority of jurisdictions have construed the MVSRA to control the content of all motor vehicle liability policies, the great majority of jurisdictions which have decided the issue have held otherwise, following the plain language of the act itself. *See* Annot., 8 A.L.R.3d 388 (1966).

It should also be noted that the "motor vehicle liability policy" defined in I.C. § 49–1521, is not the same as the "automobile liability policy" which is described in I.C. § 49–1505(c), –(d), as part of the "safety responsibility law" of the MVSRA. *See, e. g., Johnson v. Universal Automobile Ass'n, supra; State Farm Mutual Automobile Ins. Co. v. Hubbard, supra.* I.C. § 49–1505(c), –(d), merely provides that if a policy of liability insurance meeting certain coverage limits is not in effect at the time of an accident, then the security requirement of the "safety responsibility law" comes into effect. That section in no way compels liability coverage.

Subsequent legislative action also indicates that the MVSRA was not intended by our legislature to require minimum standards of insurance coverage for persons other than those affected by the restrictions of I.C. § 49–1517. On March 30, 1976, almost a full year after the Porter-Hasbrouck accident, the legislature approved a compulsory insurance law, codified as I.C. §§ 49–232 through 235. That law requires all owners of motor vehicles to continuously provide motor vehicle liability insurance in an amount not less than that required by I.C. § 49–1521. If the legislature had viewed I.C. § 49–1521 as establishing minimum standards for every insurance policy, there would have been no need in the new law to require all policies of insurance to meet the minimum liability limits contained in I.C. § 49–1521. Consequently, not only the clear language of the MVSRA, but also the apparent intent of the legislature reflected by the passage of I.C. §§ 49–232 through 235, supports a finding that the insurance exclusions do not conflict with the MVSRA. Since the compulsory insurance law did not become effective until after the date of the accident in this case, its effect upon the exclusions is not at issue, and we do not express an opinion on it. I.C. § 73–101.

A few comments are in order concerning two previous opinions by this Court. In *Farmers Insurance Exchange v. Wendler,* 84 Idaho 114, 119–20, 368 P.2d 933, 935–36 (1962), this Court stated, "It is generally held that requirements of the safety responsibility act will be read into any policy of liability insurance *issued to establish proof of financial responsibility* under the act, and that the policy will be construed to provide the coverage required by the act." (Emphasis added.) *Wendler* clearly indicates that the requirements of I.C. § 49–1521 will be read into a policy only when that policy has been issued to certify proof of financial responsibility as was the case in *Wendler.* We need not, however, decide at this time how the reading of those requirements into a certified policy would affect exclusions contained in the policy.

In *Farm Bureau Mutual Ins. Co. of Idaho v. Hmelevsky,* 97 Idaho 46, 539 P.2d 598

(1975), this Court was faced with the question of whether the insurance policy, which covered non-owner drivers operating a vehicle with "permission" of the insured owner, included coverage for a driver who was unknown to the insured, but who was given permission to drive by the insured's daughter. Although the decision of this Court in *Hmelevsky* rests upon construction of the word "permission" in the insurance policy, statements concerning I.C. § 49–1521 were also made which indicated that motor vehicle insurance policies must be construed in conformance with the requirements of I.C. § 49–1521. It is not clear from the opinion or record in that case whether the policy had been certified as proof of financial responsibility. However, discussion of I.C. § 49–1521 was not necessary to the *Hmelevsky* opinion and is therefore not controlling.

■ The appellant further argues that since the decision of this Court in *Rogers v. Yellowstone Park Co.*, 97 Idaho 14, 539 P.2d 566 (1975), the public policy of this state prohibits spousal immunity, and that an insurance company may not privately contract to defeat such public policy by excluding spousal claims from coverage. Appellant cites the recent Washington Court of Appeals case, *Mutual of Enumclaw Ins. Co. v. Wiscomb*, 25 Wash.App. 841, 611 P.2d 1304 (1980), in support of this proposition. However, the right to sue a spouse for injuries caused by that spouse is an entirely separate matter from the contractual obligation of an insurance company to pay for those injuries. The fact that there is or is not an insurance policy in force covering an accident does not affect the right of one spouse to sue and obtain a judgment against the other spouse. Consequently, we do not believe that the public policy expressed in the *Yellowstone* case as support for the abrogation of spousal immunity prohibits a contractual exclusion of spousal coverage in an insurance policy.

■ Finally, the appellant argues that the insurance policy is ambiguous in that it first provides coverage for liability because of bodily injury to "*any* person" and then excludes household members and the spouse

of the insured. There are thirteen other exclusions in the policy, and appellant admits that at least some of them are valid exclusions. Taking appellant's argument to its logical end, we would have to hold that any exclusion which reduces the scope of the words "any person" at the beginning of the policy, would create an ambiguity. However, the parties to a contract must be free to insure exactness in contracting by modifying and defining words in the contract, as long as the language is clear and unambiguous.

■ Policies of insurance, as other contracts, are to be construed in their ordinary meaning, and where the language employed is clear and unambiguous, there is no occasion to construe a policy differently than manifested by the plain words therein. *Unigard Insurance Group v. Royal Globe Insurance Co.*, 100 Idaho 123, 128, 594 P.2d 633, 638 (1979). The meaning of the policy in this case is clear, and we find no ambiguity.

The decision of the court below is affirmed.

McFADDEN, DONALDSON and SHEPARD, JJ., concur.

BISTLINE, Justice, dissenting.

I am unable to concur in the opinion of the Court because of the Court's lack of analysis on two points which I consider extremely important. First, I am troubled by the language of the policy exclusion itself. The exclusion states that the policy does not apply "to the *liability* of any insured for bodily injury to (a) any member of the same household ...." (Emphasis added.) Farmers Insurance argues that this exclusion is meant to apply to *any* liability resulting from bodily injury to a member of the household (or a named insured, which Mrs. Porter by definition was). While that may be the meaning Farmers now wishes to put on this exclusion, I am unconvinced that this provision actually so provides. Mr. Porter was adjudicated *liable for contribution* in this action; he was *not found liable to Mrs. Porter* for damages for

bodily injury.[1] As with most practitioners, I have come to have the utmost confidence in the ability of insurance companies to anticipate and provide exclusions for specific types of liability. The insurance industry generally is known to both promote legislation and keep cognizant of legislation which has been enacted. *See* I.C. § 41–1840; *Tommerup v. Albertson's Inc.*, 101 Idaho 1, 607 P.2d 1055 (1980). Had Farmers wished to exclude coverage of liability through contribution, I think it safe to assume they would have done so. That the contribution resulted from the injury to Mrs. Porter is of no consequence; there has never been a monetary judgment establishing Mr. Porter's liability to Mrs. Porter. On the contrary, she has never contended that Mr. Porter was liable to her for damages. Liability is established either by judgment or by agreement to be liable, and is not necessarily the same thing as responsibility. The judgment in this case establishes only that Mr. Porter is partially *responsible* for Mrs. Porter's damages, not that he is *liable* to her for her injuries. Since there has been no determination of Mr. Porter's liability to Mrs. Porter, I experience difficulty understanding the manner in which the exclusion for liability to a named insured and family members is even applicable. This case involves Hasbrouck seeking contribution from Mr. Porter; it does not involve liability of Mr. Porter to Mrs. Porter. The Court's opinion apparently does not see this as an issue necessary of resolution, or even as entitled to discussion.

Secondly, I would feel more comfortable if the opinion dealt more adequately with the contention that this exclusion should be declared void as a matter of public policy. After noting the recent Washington case of *Mutual of Enumclaw Insurance Co. v. Wiscomb*, 25 Wash.App. 841, 611 P.2d 1304 (1980), the Court states that the right to sue one's spouse for injuries is entirely separate

from the contractual obligation of an insurance company to pay for those injuries. While this is undoubtedly true, it does not explain away the *Wiscomb* case. There, too, the insurance company had attempted to limit its contractual obligation by excluding family members. There, too, the doctrine of spousal immunity had earlier been discarded. The court in *Wiscomb* noted that it was the public policy of Washington which prohibited intrafamily immunity and that the question before it was whether "an insurance company may privately contract to exclude coverage of claims between family members." *Id.* at 1306. The court concluded that such an exclusion was void as against public policy:

"[S]trong public policy ... and society's interest in permitting injured victims of automobile accidents to recover against the tort-feasor, even if the tort-feasor is a member of the family or household, dictates that the exclusion clause in question be declared null and void as contrary to public policy. The rationale supporting the family exclusion clause has clearly been rejected in this state, and any attempt by an insurance carrier to privately restrict recovery must be prohibited." *Id.* at 1307–08.

This Court, like Washington's, rejected the rationale which prohibited spousal immunity in *Rogers v. Yellowstone Park Co.*, 97 Idaho 14, 539 P.2d 566 (1975). That case implicitly recognized what I had always considered to be obviously sound public policy; tort victims should be able to recover against tortfeasors. Further, as stated in *Shingleton v. Bussey*, 223 So.2d 713, 716 (Fla.1969):

"Automobile insurance has taken an important position in the modern world. *It is no longer a private contract merely between two parties.* The greater part of litigation in our trial courts is con-

---

1. Notwithstanding that I.C. § 6–803 and I.R.C.P. 14(a) allowed Hasbrouck to bring Mr. Porter into Mrs. Porter's lawsuit on a claim that Mr. Porter was causally negligent, Mrs. Porter did not at any time contend that Mr. Porter was negligent. Mr. Porter was not a party defendant in Mrs. Porter's lawsuit. Had Mrs. Porter sued Mr. Porter, her claim for relief was a cause of action which is barred by the two year statute of limitations. Hasbrouck's lawsuit was based on the statutory liability of I.C. § 6–803, and falls into the class upon which suit must be brought in three years. I.C. § 5–218.

**138**

cerned with claims arising out of property damage, personal injury or death caused by operation of motor vehicles. The legislatures of all our States have recognized the hazards and perils daily encountered and as a result have enacted various pieces of legislation aimed at the protection of the injured party. . . . That the general welfare is promoted by such laws can be little doubted. Government and the general public have an understandable interest in the problem. Many persons injured and disabled from automobile accidents would become public charges were it not for financial assistance received from the insurance companies." (quoting *Simmon v. Iowa Mutual Casualty Co.*, 3 Ill.2d 318, 121 N.E.2d 509, 511 (1954)).

Given the importance of automobile insurance, given the potential impact on society if insurance companies are allowed to exclude this class of people from coverage, and given the policy against interspousal immunity, it is understandable that the Washington court has recognized that insurance exclusions such as the present one violate public policy.

The Court's discussion of the MVSRA seems to be a bit of a red herring; the MVSRA did not, at the time of this accident, specifically prevent this type of exclusion, but neither did it permit it.[2] The question of whether *this Court* will sanction such an exclusion is an entirely separate one. The Court reads the exclusion into the policy and sanctions it. I do neither. I would interpret the legislature's action in requiring compulsory insurance covering liability to family members, *see* I.C. §§ 49–233, 49–1521, as even further support for declaring this exclusion void as against public policy. Since the majority fails to ad-

dress these issues, and because I am of the opinion that, had they been addressed, such discussion might very well have led to a different result, I respectfully dissent.

---

**2.** As the court in *National Union Fire Insurance Co. v. Truck Insurance Exchange, Inc.*, 107 Ariz. 291, 486 P.2d 773, 776 (1971) stated, "the legislature [by passing a financial responsibility act] focused . . . attention on the need for security against uncompensated damages arising from the operation of motor vehicles on our highways." The action of the Idaho legislature in enacting a financial responsibility act militates in favor of a holding that an exclusion

such as the present one should be declared void as against public policy. I submit that the need to protect unwary insurance customers, and the need to secure against uncompensated damages arising from auto accidents, is nowhere greater than where an insurance company deliberately excludes the largest class of persons to whom an insured is likely to become liable—members of the insured's family.