129 So.2d 669

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY**

v.

**Johnnie Mae HUBBARD.**

**6 Div. 284.**

Supreme Court of Alabama.

March 23, 1961.

Rehearing Denied May 18, 1961.

Jas. L. Shores, Jr., Birmingham, and Dominick, Rosenfeld & Roberts, Tuscaloosa, and Jackson, Rives, Pettus & Peterson, Birmingham, for appellant.

Skidmore & Davidson and deGraffenried, deGraffenried & deGraffenried, Tuscaloosa, for appellees.

GOODWYN, Justice.

Huey Hubbard and his wife, Johnnie Mae Hubbard, and their son were on a trip in Mr. Hubbard's automobile when it became stuck in a mud hole near Boligee, Alabama. To get the car out, Mr. Hubbard placed some boards under the rear wheels to furnish traction. Mrs. Hubbard and the son then moved away from the car. As Mr. Hubbard was driving the car out of the mud hole, the rapid turn of the rear wheels caused one of the boards to be thrown against Mrs. Hubbard's leg, injuring her. She was hospitalized for about twelve days and was on crutches for about three months. She incurred certain medical expenses in connection with her injury.

Mr. Hubbard's car, at the time, was covered by a policy of liability insurance issued by State Farm Mutual Automobile Insurance Company, herein referred to as State Farm, with limits of $5,000 in case of bodily injury or death of one person, $10,-000 when more than one person is involved, and $500 for medical expenses.

With respect to the bodily injury coverage (Coverage A), the policy contains what is generally referred to as a "household exclusion" provision, that is, there is excluded from such coverage "any member of the family of the insured residing in the same household as the insured."

Mrs. Hubbard received her injury on May 12, 1956. On July 7, 1956, Mr. Hubbard reported it to the Tuscaloosa agent of State Farm who had sold him the policy. The agent, on the same day, informed State Farm's adjuster of the injury, who then secured, on the same day, a written statement from Mr. Hubbard concerning the accident. This statement not only gave details as to how the accident occurred but also showed Mrs. Hubbard's injury, medical treatment and hospitalization. There was some discussion between the adjuster and Mr. Hubbard as to whether there was coverage of Mrs. Hubbard's medical expenses. The adjuster wrote State Farm's regional office at Birmingham concerning this question. Upon receiving notice from the regional office that the policy covered the medical expenses, the adjuster, on July 10, 1956, notified Mr. Hubbard to this effect. Mr. Hubbard informed the adjuster that Mrs. Hubbard was still under medical treatment and her final medical expenses had not been determined. There is evidence supportive of a finding that both the agent and adjuster knew or were informed that Mr. and Mrs. Hubbard were residing in the same household at the time of the accident.

During the following three or four months the adjuster had several telephone conversations with the Hubbards concerning Mrs. Hubbard's condition. Towards

the end of this period the adjuster offered to pay $327.17 for the medical expenses incurred by Mrs. Hubbard. The offer was refused. In this connection, the adjuster presented for execution a release acknowledging said sum to be "in full settlement and discharge of any and all amounts due the undersigned."

On October 17, 1956, Mrs. Hubbard filed with the director of public safety of Alabama a report of the accident on a so-called form SR–13. (This form was prepared by the director of public safety pursuant to § 4 of the "Motor Vehicle Safety-Responsibility Act," Act No. 704, appvd. Sept. 5, 1951, effective Jan. 1, 1952, Acts 1951, Reg. Sess., Vol. II, p. 1224 [§§ 7 and 14 of Act No. 704 were amended by Act No. 72, appvd. June 18, 1959, Acts 1959, Vol. I, p. 478, but such amendments do not affect this case]. It is to be noted that § 4 requires the *operator* of a motor vehicle to make the report. However, the fact that the report was made by the injured person and not the operator is of no significance in this case.) The report stated when, where and how the accident occurred, the nature of Mrs. Hubbard's injury, and that the driver and owner of the vehicle was Huey Hubbard, giving his address.

On November 6, 1956, the director's office sent to Mrs. Hubbard a form SR–54 (also prepared by the director of public safety, apparently pursuant to § 2(a) of Act No. 704, supra, providing that "The Director shall administer and enforce the provisions of this Act and may make rules and regulations necessary for its administration"), which included an affidavit, to be completed by her and returned if she had a claim for personal injuries or property damages. Mrs. Hubbard completed her part of the SR–54 and returned it to the director's office on November 16, 1956. Since the attending doctor's report was not filled out, the SR–54 was sent back to Mrs. Hubbard. The doctor's report was then obtained and the form returned to the director's office on November 27, 1956. The affidavit showed a $25,000 claim by Mrs.

Hubbard against Mr. Hubbard for her personal injuries. The doctor's report showed the cost of his services to date (November 23, 1956) to be $105 and the estimated total cost of medicines to be "unknown." Mrs. Hubbard's affidavit made no separate claim for medical expenses.

After receipt of the SR–54 in the director's office, a search was made to determine whether there was on file in said office evidence satisfactory to the director showing security on behalf of Mr. Hubbard with respect to said accident (§ 5, Act No. 704, supra). Finding none, the director's office, on November 28, 1956, mailed to Mr. Hubbard its form SR–8 (apparently prepared by the director pursuant to § 2(a) of Act No. 704), being, in essence, a notice of the security requirements of Act No. 704. This form contained an order that Mr. Hubbard forward to the department of public safety his driver's license, registration certificate, and registration plates, by December 14, 1956, in event he should fail to comply with the security provisions of the law (§ 5(b), Act No. 704). The notice also contained the following with respect to the security required, viz.:

"As a result of the above referred to motor vehicle accident in which you or a motor vehicle owned by you were involved, you have become subject to the Alabama Motor Vehicle Safety-Responsibility Law.

"(1) If there was in effect at the time of the accident a standard provisions automobile liability policy insuring your liability for damages resulting from the accident, you must secure at once from the insurance agent or company a notice to that effect, (Form SR 21), and send it to this Unit with this letter. If you file Form SR 21 you are relieved of furnishing security, and you should disregard the remainder of this letter.

"(2) If you are unable to comply with paragraph (1) above, then you are required on or before the effective date of the below order of suspension.

"(a) To deposit cash, certified check, surety bond or negotiable securities in the amount of $5,000.00 with the Department of Public Safety, Safety Responsibility Unit, as security to satisfy any judgment or judgments for damages resulting from the accident.

"(b) Or to submit to the Department of Public Safety, Safety Responsibility Unit, a notarized release for damages from all persons injured, whether a pedestrian, an occupant of your vehicle or any other vehicle involved in the accident, and from all persons whose property was damaged in excess of fifty dollars ($50.00), which may be a general release or a conditional release based on an agreement to pay an agreed amount in installments."

On December 4, 1956, the director's office received a form SR–13 (report of accident, apparently prescribed by the director pursuant to § 4 of Act No. 704) completed by Mr. Hubbard and to which was attached by perforation a form SR–21. (We find no provision of the Act calling for such Form SR–21.) Apparently it was prepared by the director under the provisions of § 2(a). Mr. Hubbard had completed the required portion of this form SR–21 in connection with the security provisions of Act No. 704. On the form he indicated that he had an insurance policy with State Farm covering liability damage or injury to others in connection with the accident of "5–12–56 in or near Boligee, Alabama." This part of the form SR–21 is as follows:

"Alabama | Do Not Detach | Case No.

If you fail to give full information below, it will be assumed that you did not have automobile liability insurance | E 21515

"Name of Company which issued Insurance Policy to Cover Liability for Damage or injury to others    State Farm Insurance Company

Name of Agent who sold policy   Ralph K. Bowen   Address   Box 909, Tuscaloosa, Ala.

2–20–57

Policy Period from   2–20–56   To   8–20–56    Policy No.   569782—B2001

Date of Accident   5–12–56    In or Near   Boligee, Alabama

Make of Your Vehicle   Mercury    Type   2–DR.    Year   1952   Motor No.   58391

Lic. No.   63–3834   Ala.   State No.

Driver   Huey Hubbard    Address   Holt, Alabama
Owner   Same    Address   Same
Policy Holder   Same    Address   Same
Form SR–21"

On the other side is another part of the form SR–21 for execution by the insurance carrier. This was mailed by the director's office to State Farm's regional office in

Birmingham. Before mailing, the form SR–21 had been detached from the form SR–13 filed by Mr. Hubbard. On December 14, 1956, the form SR–21 was returned to the director's office, State Farm having verified that it had insured Mr. Hubbard with an automobile liability policy that conformed with the "requirements of the Motor Vehicle Safety-Responsibility Act."

This part of form SR–21, as completed by State Farm, is as follows:

"Do Not Detach This Form SR–21

"To: Drivers License Division
Motor Vehicle Safety Responsibility Unit
P.O. Box 1471
Montgomery, Alabama

"The undersigned company advises that with respect to the accident and the automobile liability policy reported on reverse side of this form, such policy conforms with requirements of the Motor Vehicle Safety Responsibility Act on such policy:

"Was in effect   x   Was Not in effect _____

Policy Number 569782–B2001      Period from   2–20–56

                                                   To     6–20–56

| Received | Received | |
|---|---|---|
| Dec 14, 1956 | Dec 4, 1956 | To: Insurance Agent |
| Safety Resp. Unit | Safety Resp. Unit | If this subject was covered by liability insurance as stated in this form, please verify and return to this office at once. Failure to do so, will result in suspension of driver's license and license plates of this subject." |

---

It is to be noted that the Act does not require an insurance carrier to file such form or to give notice in any other manner of the existence of an "automobile liability policy" issued by it.

We find nothing in the record affirmatively showing that Mrs. Hubbard was making claim against her husband for her personal injuries prior to the time she filed the SR–54. Nor does the record disclose that State Farm had actual knowledge of the filing of her said claim when it filed the SR–21. Nor is there any affirmative evidence that Mr. Hubbard claimed coverage under the policy for Mrs. Hubbard's injuries prior to the filing of the SR–21 by State Farm.

It was stipulated that the form SR–21 was filed with the Director of Public Safety by "an agent, servant or employee" of State Farm, "with full authority to act for said Company."

No further action was taken with respect to suspending Mr. Hubbard's driving privileges.

On January 7, 1957, Mrs. Hubbard filed suit against Mr. Hubbard in the circuit court of Tuscaloosa County claiming $25,000 damages for her personal injuries suffered as a result of the accident. The complaint was served on Mr. Hubbard on January 9, 1957. Immediately thereafter he delivered the suit papers to State Farm's ad-

juster in Tuscaloosa, who forwarded the papers to State Farm's regional office on January 14, 1957. Pursuant to the company's instruction the adjuster contacted Mr. Hubbard on January 16, 1957, and obtained from him an additional statement to the effect that he and Mrs. Hubbard were living together as man and wife at the time of the accident and at the time the suit was brought.

On January 24, 1957, State Farm sent to Mr. Hubbard a letter by registered mail informing him that, in view of the exclusion of coverage of "any member of the family of the insured residing in the same household as the insured," it would not "furnish or pay for the defense of this law suit filed against you by your wife." The letter further stated that an investigation had revealed that the plaintiff was the insured's wife and that they were residing in the same household on May 12, 1956, the date of the accident. The letter also stated that the insured had "medical pay coverage * * * which will pay for the actual verified medical expenses up to $500 of your wife incurred in one year from May 12, 1956, as a direct result of this accident," and that State Farm "will be glad to make payment on the medical coverage at any time."

On February 9, 1957, a judgment by default was rendered in favor of Mrs. Hubbard against Mr. Hubbard in the amount of $25,000.

On May 13, 1957, Mrs. Hubbard, pursuant to Code 1940, Tit. 28, § 12, as amended by Act No. 283, appvd. Aug. 5, 1953, Acts 1953, Vol. I, p. 350, filed a bill in the circuit court of Tuscaloosa County, in equity, against Mr. Hubbard and State Farm for the purpose of collecting said judgment.

On December 10, 1957, the cause was submitted for decree on the pleadings, a stipulation of the parties, exhibits introduced in evidence, and oral testimony taken before the trial court.

On January 22, 1958, a decree was rendered against State Farm holding that it had waived its right to assert the household exclusion provision of its policy when it voluntarily filed the form SR–21 with the department of public safety, and that it had acted in bad faith in refusing to defend the law suit brought by Mrs. Hubbard against Mr. Hubbard; and ordering State Farm to pay Mrs. Hubbard the sum of $5,000, the face of the policy, and also the $20,000 excess of the judgment in her favor against Mr. Hubbard, together with 6% interest thereon from the date of such judgment, and to pay Mr. Hubbard the sum of $1500 as a fee for his attorneys' services in the equity proceeding. State Farm was also assessed with the costs of the equity proceeding. From that decree, State Farm prosecutes this appeal.

We do not understand State Farm to insist that the principle of waiver is inapplicable with respect to the household exclusion provision of the policy. Accordingly, we will assume for the purposes of this case, without deciding, that it is applicable. State Farm argues that its conduct in filing the SR–21 "did not waive any right arising from the policy issued to Mr. Hubbard."

█ As already noted, the trial court held that there was a waiver. The correctness of that holding is the decisive question presented on this appeal. In view of our conclusion that such holding was error, there is no occasion to consider or discuss that portion of the decree ordering payment by State Farm to Mrs. Hubbard of the $20,000 excess of the judgment in her favor against Mr. Hubbard, and payment to Mr. Hubbard of the sum of $1500 as a fee for his attorneys' services. Since there was not a waiver of the household exclusion provision, State Farm was under no obligation to defend Mrs. Hubbard's suit against Mr. Hubbard and, hence, there is no liability on State Farm growing out of its refusal to defend such suit.

Act No. 704 may be said to consist of two parts, one providing for security for injuries and damages resulting from accidents which have already occurred, and the other providing for proof of ability to respond in damages (that is, "Proof of Financial Responsibility") for liability on account of accidents occurring subsequent to the effective date of said proof. Our concern here is with the first part.

It is to be noted that the Act specifically provides in § 5(c) that a deposit of security is not required "if such owner had in effect at the time of such accident an automobile liability policy with respect to the motor vehicle involved in such accident" (certain minimum monetary limits being prescribed). We here observe that the "automobile liability policy" referred to in § 5(c) is not the same as a "motor vehicle liability policy" provided for in connection with the second part of the Act, that is, "Proof of Financial Responsibility" with respect to future accidents (see §§ 19 through 21). The Act contains no definition of an "automobile liability policy", as used in § 5(c), as it does of a "motor vehicle liability policy" (see § 21(a)). Nor does the Act provide that an "automobile liability policy" contain certain provisions, nor that such policy shall be subject to certain provisions, although not contained therein, as it does with respect to a "motor vehicle liability policy" (see § 21(b) through (k)).

Let us see just what it is that State Farm conceded or admitted when it filed the SR–21. By the very terms of the SR–21, it admitted that the policy "conforms with requirements of the Motor Vehicle Safety-Responsibility Act." But there is nothing in the Act providing for or requiring a policy in connection with the security provisions other than "an automobile liability policy with respect to the motor vehicle involved in such accident." And what is such a policy? It seems to us that it means simply an automobile liability policy valid under the laws of Alabama and containing the minimum prescribed limits of liability. There appears to be no disagreement that the policy issued by State Farm (containing the household exclusion provision) is valid in this state. So, when State Farm filed the SR–21, can it be said it intended to certify or admit that the policy did not contain such lawful exclusion provision? We do not think so. There can be no waiver without the intentional relinquishment of a known right. Bell v. Birmingham Broadcasting Co., 263 Ala. 355, 357, 82 So.2d 345; Isom v. Johnson, 205 Ala. 157, 159, 87 So. 543; 56 Am.Jur., Waiver, § 2, p. 102, § 15, p. 115; 45 C.J.S. Insurance § 673, pp. 612–613. Clearly, it seems to us, there is no showing of an intentional relinquishment by State Farm of its right to rely on the household exclusion provision of its policy. The policy being a valid "automobile liability policy", and the Act providing for such policy, we are clear to the conclusion that, under the circumstances of this case, there was no waiver of the household exclusion provision.

It might well be that the provisions of Act No. 704 making the security provisions of the Act inapplicable if the owner had in effect at the time of an accident "an automobile liability policy with respect to the motor vehicle involved in such accident," should be changed to provide more protection under such a policy than is presently the case. That, however, is a matter which is addressable to the legislature. For us to hold it was intended by the present Act to afford such additional protection would be to legislate by judicial decree.

We have given careful consideration to the several Wisconsin cases relied on by appellee, viz.: Laughnan v. Griffiths, 271 Wis. 247, 73 N.W.2d 587; Perlick v. Country Mut. Cas. Co., 274 Wis. 558, 80 N.W.2d 921; Behringer v. State Farm Mut. Auto Ins. Co., 275 Wis. 586, 82 N.W.2d 915. We are not persuaded that they should be of controlling effect in considering the Alabama Act. For a discussion of these and other Wisconsin cases, and legislative action taken in Wisconsin, see: Wisconsin

**188**

Law Rev.1959, p. 552, "Insurance—The New Safety Responsibility Law"; 40 Marquette Law Rev., p. 241, "Insurance—The Effect of an Insurer Filing the SR–21 Form"; 42 Marquette Law Rev. p. 116, "Estoppel to Raise Defenses Under Wisconsin's Revised SR–21 Procedure"; 24 Insurance Counsel Journal, p. 130, Miller, "SR–21, Notice or Contract?"; 25 Insurance Counsel Journal, p. 342, Miller, "The New SR–21 in Wisconsin."

For a discussion of legislation similar to Act No. 704, see: 27 Tulane Law Rev. 341; 33 Iowa Law Rev. 522.

The decree appealed from is due to be reversed and a decree will be rendered here dismissing the bill.

Reversed and rendered.

LIVINGSTON, C. J., and LAWSON, STAKELY and MERRILL, JJ., concur.