BOLIN, Justice.
Warren Grimes and Johanna Grimes appeal from a declaratory judgment holding that a liability policy issued by Alfa Mutual Insurance Company (“Alfa”) did not provide coverage for a user of an automobile who did not have the express permission of the owner or drivers covered by the policy.
Facts and Procedural History
On May 7, 2010, Teresa Boop added liability coverage and uninsured/underin-sured-motorist coverage for a pickup truck to her automobile insurance with Alfa. Boop also added her minor son as a driver under the policy. Boop’s son was listed as the rated driver for the pickup truck and his addition was reflected in the rates charged by Alfa for the additional coverage. The liability provision of the policy provided:
“If this coverage is shown on your declaration, we will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of a car acci *477 dent arising out of the ownership, use or maintenance of a covered ear or non-owned car. We will settle or defend lawsuits asking for these damages until your coverage for such damage has been exhausted with attorneys hired and paid by us as we consider appropriate. In addition to our limit of liability, we will pay all defense costs we incur. We have the right to investigate, negotiate and settle any claim or suit. We have no duty to defend any suit or settle any claim for bodily injury or property damage not covered under this policy.”
The policy defined “covered person” as:
“1. You and your:
“2. Family members.
“3. Any other person while using the covered car with the express permission of you or a family member.
“4. Under Part A [liability coverage], any person or organization legally responsible for the use of the covered car by covered persons as defined under the three subsections above.
“5. Under Part D [uninsured/underin-sured-motorist coverage], any person while occupying your covered car.”
On May 23, 2010, Amy Arrington was operating the pickup truck when it collided with a vehicle owned and occupied by the Grimeses. Both of the Grimeses suffered personal injuries as a result of the collision. The Grimeses’ vehicle was insured by Liberty Mutual Group, Inc.
On April 16, 2012, Liberty Mutual sued Arrington, alleging negligence and wantonness and seeking recovery of damages for the Grimeses’ vehicle. On May 23, 2012, the Grimeses sued Arrington and Boop, alleging negligence, wantonness, and negligent entrustment, and seeking damages for their personal injuries. Arrington filed answers, arguing that she was a covered person under the terms of Boop’s policy with Alfa and that Alfa, therefore, should provide her with a defense in the Grimes-es’ action and in Liberty Mutual’s action.
On October 15, 2012, Alfa filed a complaint, seeking a judgment declaring that the Alfa policy did not require it to defend either lawsuit or to pay damages caused by the collision. Liberty Mutual and the Grimeses filed a joint motion to dismiss Alfa’s declaratory-judgment action, which the trial court denied. On February 14, 2014, Liberty Mutual filed a motion for a partial summary judgment, arguing that, under the Alabama Motor Vehicle Safety Responsibility Act, § 32-7-1 et seq., Ala. Code 1975 (“the MVSRA”), and the Mandatory Liability Insurance Act, § 32-7A-1 et seq., Ala. Code 1975 (“the MLIA”), Alfa was required to extend coverage to drivers of covered vehicles who have the implied permission of the insured to operate the vehicle. Thé trial court denied the motion.
On August 19, 2015, Alfa’s declaratory-judgment action went to trial with all the parties present. The trial court entered the following order:
“This matter comes before the Court upon the complaint of Alfa Mutual Insurance Company (‘Alfa’) seeking a declaratory judgment to determine coverage arising from an automobile accident which occurred on May 23, 2010. The .court called the case for hearing at its scheduled time on August 19, 2015, and all parties were present with their respective attorneys of record. The court heard testimony, accepted exhibits, and considered various motions and arguments of counsel. Defendant Liberty Mutual Group was granted leave to submit a post-trial amendment to its motion for judgment as a matter of law filed in open court at the close of all the evidence. Based upon the relevant and competent evidence presented, the court finds and adjudges as follows:
*478 “1. On the aforementioned date of May 23, 2010, Teresa Boop was the owner of a 1990 Chevrolet K1500 pickup truck covered by a policy of liability insurance issued by Alfa, namely, Policy number A2234762. Ms. Boop and her minor son, Ryan, were the primary drivers of the referenced vehicle.
“2. At the time, of the May 23, 2010, accident, Amy Arrington was operating the Boop pickup when it collided on Highway 84 with a vehicle occupied by Warren and Johanna Grimes. Lawsuits were subsequently filed by Liberty Mutual Group against Amy Arrington and by the Grimeses against Teresa Boop and Amy Arrington, to recover damages. After the suits were instituted, Amy Ar-rington called upon Alfa to extend bodily injury and property damage coverage to provide for her legal defense and satisfy any judgment returned against her.
“3. Part A of the subject Alfa policy in fact provides liability coverage' ‘for bodily injury or property damage for which any covered person becomes legally responsible because of a car accident arising out of the ownership, use or maintenance of a covered car.’ A ‘covered person’ is elsewhere defined in the policy tó include the insured, insured’s family members, and any other person while using the covered car with the express permission of the insured or a family member. The policy contains no provision for liability coverage to users of the vehicle with implied permission.
“4. Alfa subsequently filed this action requesting a declaratory judgment be entered finding that it ‘is without obligation to provide ... insurance protection or [indemnity] benefits’ for the May 23, 2010, car accident because Amy Arrington did not have the requisite express permission to use the vehicle. Defendants not only contend that Ms. Ar-rington did have express permission from Ms. Boop and/or Ryan to use the vehicle, but further assert she had implied permission under all the attendant facts and circumstances and, therefore, ■Alfa is statutorily bound to extend liability coverage for the accident pursuant to Alabama Code § 32-7-22 (1975). Thus, a justiciable controversy exists between the parties as to the policy’s liability coverage.
“5. In reiteration, the Alfa policy in question limits liability coverage to users of covered vehicles having express permission. Alabama Code § 32-7-22 (1975) is inapplicable in this instance. On the occasion of the May 23, 2010, vehicular collision involving the Grimeses and Amy Arrington, the latter- was a non-insured' operator of the Boop pickup truck as she did not have the express permission of the insured (or her son) to use same. Accordingly, there is no coverage under the subject policy and Alfa has no contractual or other legal obligation to defend the respective actions brought by the Grimeses and Liberty Mutual Group or to pay any damages they may recover.”
The Grimeses appealed.[1]
Standard of Review
When the trial court hears ore ten-us evidence during a bench trial, this Court’s review of a declaratory judgment is ordinarily governed by the ore tenus standard. Fort Morgan Civic Ass’n, Inc. v. City of Gulf Shores, 100 So.3d 1042 (Ala. 2012). “ ‘However, the ore tenus rule does not extend to cloak a trial judge’s eonclu- *479 sions of law, or incorrect application of law to the facts, with a presumption of correctness.’ ” Aetna Cas. & Sur. Co. v. Mitchell Bros., Inc., 814 So.2d 191, 195 (Ala. 2001)(quoting Eubanks v. Hale, 752 So.2d 1113, 1144-45 (Ala. 1999)).
Discussion
The Grimeses argue that the trial court erred when it failed to apply the MVSRA to its analysis of the underlying policy, which was issued pursuant to the MLIA. The Grimeses argue that the MVSRA and the MLIA should be read in pari materia. Specifically, the Grimeses argue that § 32-7-22, Ala. Code 1975, of the MVSRA requires the liability .policy issued by Alfa to provide coverage for individuals operating the vehicle with either the express or im.plied permission of the insured. They argue that in Billups v. Alabama Farm Bureau Mutual Casualty Insurance Co., 352 So.2d 1097 (Ala. 1977), this Court held that an owner’s liability insurance policy must insure the named insured and any other person who is using the insured vehicle with the express or implied permission of the named insured. The Grimeses also argue that the MLIA requires Alfa to provide liability coverage for individuals driving the insured’s vehicle with the insured’s implied permission.
Alfa argues that the MVSRA does not require that a liability policy provide coverage for drivers whose permission to use the covered vehicle is implied unless the policy is a “motor vehicle liability policy” required as “proof of financial responsibility” under § 32-7-22, Ala. Code 1975. Alfa argues that this Court has recognized a distinction ⅛ the MVSRA between an “automobile liability policy” and a “motor vehicle liability policy.” Alfa asserts that this Court has consistently refused to require all liability policies to provide coverage for users with implied permission. Lastly, Alfa argues that the language of the MLIA precludes any requirement that a liability policy provide coverage for a driver using a vehicle with implied permission. .
I.
A brief history of the MVSRA and the MLIA is necessary for our discussion. The MVSRA was enacted in 1951 with the purpose of protecting the public; American Southern Ins. Co. v. Dime Taxi Servs., Inc., 275 Ala. 51, 151 So.2d 783 (1963). Those who are answerable for damages resulting from their fault in the use and maintenance of an automobile who do not have automobile liability insurance or who are otherwise unable to financially respond to the resulting damages are subject to the loss of their driving privileges. State Farm Fire & Cas. Co. v. Lambert, 291 Ala. 645, 285 So.2d 917 (1973). It is a privilege, not a right, to operate a motor vehicle on public roadways, and licensing and registration are an exercise of state police powers to ensure safety on the public highways. Snavely v. City of Huntsville, 785 So.2d 1162 (Ala. Crim. App. 2000).
The first part of the MVSRA is retrospective in nature—it suspends the license and registration of a driver who has caused an accident and failed to establish financial x-esponsibility under the MVSRA. In short,- it requires the furnishing of collateral or proof of insurance or an ability to pay, after a motor-vehicle accident, so that victims of that accident may be assured of compensation. Section 32-7-5, Ala. Code 1975, of the MVSRA requires that any driver involved in an accident in Alabama where a person is injured or killed or that results jn more than $250 in property damage must file an accident report with the Department of Public Safety (“DPS") within 10 days of the date of the accident, That report form was amended in 2011 following the adoption of the online *480 insurance-verification system, discussed infra, a part of the MLIA.
Under § 32-7-6, Ala. Code 1975, if, after receiving the report, DPS does not have evidence that the driver has been released from liability, has been adjudicated as not liable, or has agreed to pay installments for any injuries or damage for which the driver is liable, the director of DPS shall determine the amount of security needed to satisfy the damages. DPS then suspends both the license and the vehicle registration of the driver. The determination of the amount of security does not' predetermine liability, which can be answered only in a judicial proceeding. Instead, the security protects the public from an “empty” judgment in the event fault is later established.
Under § 32-7-6, if a driver involved in an accident was reported as being uninsured and had his or her driving privileges suspended but actually had in place an “automobile liability policy,” the driver is to submit a “Proof of Liability Insurance” form to the DPS. The driving privileges will then be reinstated, and no reinstatement fees shall be assessed if the proper documentation has been provided to the DPS.
Section 32-7-7, Ala. Code 1975, sets out exceptions to providing security for an accident and suspending the driver’s privileges in § 32-7-6. One of those exceptions is if, at the time of the accident, the owner’s motor vehicle was being operated without the “permission, express or implied,” of the owner. § 32-7-7(3), Ala. Code 1975.
A driver who has caused an accident and failed to establish financial responsibility in compliance with the MVSRA will have his or her license and registration suspended for three years. § 32-7-8, Ala. Code 1975. The three-year suspension will apply until (1) the driver has deposited the security required; or (2) two years have elapsed and the driver shows that the injured person has not pursued the recovery of damages; or (3) the driver has been released from liability, has been found not to be liable, or has entered into an installment agreement to pay the damages. § 32-7-8, Ala. Code 1975.
The second part of the MVSRA is prospective. It requires “proof of financial responsibility” under certain circumstances, i.e., evidence of an ability to meet possible judgments arising from the future ownership, maintenance, or operation of a motor vehicle. Those circumstances include certain driving convictions. § 32-7-18, Ala. Code 1975. Also, a driver who has had his or her license and registration suspended because he or she caused an accident and failed to pay the minimum damages shall not have his or her license and registration renewed unless the judgment is satisfied under the MVSRA and the driver provides proof of financial responsibility. Section 32-7-22 sets out the requirements of a liability policy that suffices as “proof of financial responsibility.”
In 1965, the legislature amended the MVSRA to require policies to offer uninsured-motorist coverage. § 32-7-23, Ala. Code 1975. Section 32-7-23 allows a person purchasing automobile insurance to obtain, for an additional premium, protection against injury or death at the hands of an uninsured motorist as he or she would have had if the motorist had obtained for himself or herself a minimum liability insurance policy.
In 1999, the legislature amended the MVSRA to provide that a person must provide proof of motor-vehicle liability coverage before he or she could register a vehicle for operation on Alabama highways. § 32-7-6.1, Ala. Code 1975. See Act No. 1999-430, Ala. Acts 1999. In 2000, the *481 legislature repealed § 32-7-6.1 and enacted the MLIA. Act No. 2000-554, Ala. Acts • 2000.
The MLIA provides that no person can operate, register, or maintain registration of a vehicle (or allow another person to do so) for use on the public highways of Alabama unless the motor vehicle is covered by a liability insurance policy (§ 32-7A-4(b)(1), Ala. Code 1975); a liability bond (§ 32-7A-4(b)(2), Ala. Code 1975); or a cash deposit (§ 32-7A-4(b)(3), Ala. Code 1975). Section 32-7A-5, Ala. Code 1975, lists those vehicles and operators exempt from the provisions of the MLIA.
Every operator of a covered motor vehicle, other than those exempted in § 32-7A-5, must carry evidence of insurance within the vehicle and demonstrate that the vehicle is covered by the requisite liability insurance policy. § 32-7A-6(a), Ala. Code 1975. Section 32-7A-6(a)(l) through (5) sets out what constitutes adequate proof of coverage. The Department of Revenue is responsible for administering the MLIA. § 32-7A-3, Ala. Code 1975. The MLIA provides that the Department of Revenue may select random samples of registrations subject to the MLIA and send the owners questionnaires designed to determine whether the vehicle is properly insured. § 32-7A-7, Ala. Code 1975. Owners who receive such questionnaires must respond in 30 days, § 32-7A-7(d), and owners who fail to respond are deemed to be in violation of the MLIA. § 32-7A-7(f).
In 2011, the legislature amended the MLIA by adopting an act establishing the Online Insurance Verification System (“OIVS”). Act No. 2011-688, Ala. Acts 2011. The goal of the OIVS is to create an effective method for implementing the MLIA. Act No. 2011-688 amended parts of both the MVSRA and the MLIA. Act No. 2011-688 also added Chapter 7B to Title 32, Motor Vehicles and Traffic, regarding the duties of the Department of Revenue and insurance companies in complying with the OIVS. The OIVS allows a real-, time response to an insurance inquiry. The Department of Insurance can fine an insurance company if it determines that the insurer violates one of the provisions of the OIVS.
Section 32-7A-17, Ala. Code 1975, provides that no vehicle registration or renewal shall be issued unless the licensing official receives satisfactory evidence of insurance or verification of liability insurance through the OIVS. The vehicle owner is responsible for insuring the vehicle. The OIVS is accessible by the Department of Revenue, licensing officials, and law enforcement. In 2016, the legislature adopted Act No. 2016-361, Ala. Acts 2016, which provides for the civil enforcement of the MLIA by the Alabama Law Enforcement Agency.
II.
It is also necessary to review the rationale and analyses underlying this Court’s decisions involving the MVSRA before the adoption of the MLIA.
In State Farm Mutual Automobile Insurance Co. v. Sharpton, 259 Ala. 386, 66 So.2d 915 (1953), this Court affirmed a judgment denying the insurer’s application for a temporary injunction regarding personal-injury actions against its insured pending the resolution of its declaratory-judgment action. The insurer sought a judgment declaring that the insurer had been discharged from liability to defend and indemnify its insured because of the insured’s alleged noncooperation in the defense of the personal-injury actions. The insured contended that liability under the policy was controlled by the MVSRA and that what is now § 32-7-22 virtually eliminated the cooperation clause of the policy *482 insisted on by the insurer. This Court held that the terms required by § 32-7-22 of the MVSRA apply only to those policies required to be certified as “proof of financial responsibility” to permit the vehicle to continue to be registered. There was no showing made in Sharpton that the policy involved- was issued in response to the mandatory requirements of the MVSRA set out in what is now § 32-7-22. The Sharpton Court acknowledged that the MVSRA did not require all drivers or owners to carry liability insurance.
The MVSRA references “automobile liability policy” in the first part of the act establishing it, which,, as noted earlier, is retrospective in nature, and “motor vehicle liability policy” in the second part, which, as noted, is prospective. This .Court discussed the distinctions between those terms in State Farm Mutual Automobile Insurance Co. v. Hubbard, 272 Ala. 181, 129 So.2d 669 (1961), which involved a “household-exclusion? provision in an insurance policy. The husband’s car was insured by State Farm, and the policy excluded coverage for any member in the same household as the insured. The husband and wife were involved in an accident, and the wife was injured. She sought damages for her medical expenses. The wife refused a settlement offer. The wife filed the required report informing the director of DPS that she had been in an accident. The director notified the husband that he had to show the he had security to pay for damages arising out of the accident or his license and registration would be suspended. The husband completed the report, notifying the director that he was insured. The director sent a report to State Farm for it to .verify that the husband was insured, which it did. The husband’s license and registration were not suspended.
The wife then sued her husband, seeking damages under the policy. State Farm sent a letter to the husband notifying him that the wife’s damages were excluded by the “household” exclusion in, the policy. The household exclusion eliminated coverage for damages sought by the insured’s resident relatives when one family member’s negligence results in liability to another family member in the same household. The, wife obtained a default judgment against the husband. The wife then sued State Farm and her husband to collect on the judgment. The trial court entered an order holding that State Farm had waived its right to assert the household-exclusion provision of its policy when it voluntarily filed the requested report with DPS and that it had acted in bad faith in refusing to defend the lawsuit brought by the wife, and, 'thus, the court awarded damages under the policy. •
On appeal, this Court in Hubbard noted that the MVSRA has two parts, one providing for security for injuries and damage resulting from accidents that have already occurred, and the other providing for proof of ah ability to respond, in damages (that is, “proof of financial responsibility”) “for liability on account of accidents occurring subsequent to the effective date of said proof.” 272 Ala. at 187, 129 So.2d at 675. The issue before the Hubbard Court concerned the first part of the MVSRA. The Court noted that'Áct No. 704, Ala. Acts 1951, now codified as § 32—7—6(c)(1), Ala. Code 1975, does not require a deposit of security when there has been an accident if there is in effect at the time of the accident an “automobile liability policy” with respect to the involved car. The Court stated:
“We here observe that the -automobile liability policy’ referred to in § 5(c) [now § 32-7-6(c)(l)j is not the same as a ‘motor vehicle liability policy' provided for in connection with the second part of the *483 Act, that is, ‘Proof of Financial Responsibility’ with respect to future accidents (see §§ 19 through 21)[now §§ 32-7-15 through -22]. The Act contains no definition of an ‘automobile liability policy,’ as used in § 5(c) [now § 32—7—6(c)(1)], as it does of a ‘motor vehicle.liability policy’ (see § 21(a) [now § 32-7-22]). Nor does the Act provide that an ‘automobile liability policy’ contain certain provisions, nor that such policy shall be subject to certain provisions, although not contained therein, as it does with respect to a ‘motor vehicle liability policy’ (see § 21(b) through (k) [now §§ 32-7-20 through -22]).”
Hubbard, 272 Ala. at 187, 129 So.2d at 675.
The Court went on to conclude that the filing of the report by State Farm, the very terms of which admit that the policy conforms with the MVSRA, did not waive the household exclusion:
“[T]here is nothing in the Act providing for or requiring a policy in connection with the security provisions other than ‘an automobile liability policy with respect to the motor vehicle involved in such accident.’ And what is such a policy? It seems to us that it means simply an automobile liability policy valid under the laws of Alabama and containing the minimum prescribed limits of liability. There appears to be no disagreement that the policy issued by State Farm (containing the household exclusion provision) is valid in this state. So, when State Farm filed the SR-21, can it be said it intended to certify or admit that the policy did not contain such lawful exclusion provision? We do not think so. There can be no waiver without the intentional relinquishment of a known right. Bell v. Birmingham Broadcasting Co., 263 Ala. 355, 357, 82 So.2d 345 [ (1955) ]; Isom v. Johnson, 205 Ala. 157, 159, 87 So. 543 [ (1920]); 56 AmJur., Waiver, § 2, p. 102, § 15, p. 115; 45 C.J.S. Insurance § 673, pp. 612-613. Clearly, it seems to us, there is no showing of an intentional relinquishment by State Farm of its right to rely on the household exclusion provision of its policy. The policy being a valid ‘automobile liability policy,’ and the Act providing for such policy, we are clear to the conclusion that, under the circumstances of this case, there was no waiver of the household exclusion provision.
' “It might well be that the provisions of Act No. 704 making the security provisions of the Act inapplicable if the owner had in effect at the timé of an accident ‘an automobile liability policy with respect to the motor vehicle involved in such accident,’ should be changed to provide more protection under such a policy than is presently the 'case. That, however, is ¾ matter which is addressable to the legislature. For us to hold it was intended by the present Act to afford such additional protection would be to legislate by judicial decree.”
Hubbard, 272 Ala. at 187, 129 So.2d at 675 (emphasis added). The underlying premise in Hubbard is that liability insurance is not mandatory' unless it is required for proof of financial responsibility for future accidents.' Otherwise, a voluntary liability insurance policy is not restricted by the MVSRA and it'is for the legislature to determine whether to require more protection under such a policy.
Mooradian v. Canal Insurance Co., 272 Ala. 373, 377, 130 So.2d 915, 917 (1961), involved a “passenger-hazard” exclusion in a. policy. The Court held that the liability policy had not been issued for the purpose of complying with the MVSRA as proof of financial responsibility.
“Proof of financial responsibility as defined in § l(j) of the Act is ‘proof of ability to respond in damages for liabili *484 ty, on account of accident occurring subsequent to the effective date of said proof.’ Accordingly proof of financial responsibility is not required until a motor vehicle is involved in an accident. Quoting from Sullivan v. Cheatham, 264 Ala. 71, 84 So.2d 374, 379 [(1955)]: ‘Our statute has oft been criticized as ‘allowing one free accident.’ The terms of the Motor Vehicle Safety-Responsibility Act, supra, then are not effective or do not apply to automobile liability insurance policies until proof of financial responsibility to respond in damages as a result of an accident is required by the director of public safety of the State of Alabama to be filed in his office so that the operator of the motor vehicle will not have his driver’s license and certificate of registration suspended.”
Mooradian, 272 Ala. at 377, 130 So.2d at 917. The Mooradian Court noted in its reasoning that automobile insurance was not compulsory.
In Billups, supra, a policy provided liability coverage for the named insured and anyone using the covered vehicle “with the express or implied permission of the named insured,” as required by statute. 352 So.2d at 1101. The policy provided for uninsured-motorist (“UM”) coverage; however, the policy limited the scope of UM coverage to those using the vehicle with the express permission of the named insured. Billups was a passenger in the covered vehicle when it collided with a vehicle driven by an uninsured motorist. The driver of the covered vehicle did not have the express permission of the named insured to use the vehicle. The trial court entered a judgment as a matter of law in favor of the insurer, enforcing the UM provision that required express permission. On appeal from that judgment, this Court held that the insurer could not unilaterally restrict UM coverage to those who used the covered vehicle with express permission. The Billups Court first recognized that what is now § 32-7-22 of the MVSRA provides that mandatory liability coverage must include coverage for both express and implied permissive users of the covered vehicle. The Court went on to discuss the provisions in what is now § 32-7-23, Ala. Code 1975, of the MVSRA regarding UM coverage. The Court stated:
“The question is the effect the statutory provisions have upon the scope of uninsured motorist coverage under the policy. This court has held that the scope of uninsured motorist coverage must be coextensive with liability coverage. State Farm Automobile Insurance Co. v. Reaves, 292 Ala. 218, 292 So.2d 95 (1974). In Reaves, supra, we stated that, ‘once an automobile liability policy is issued extending coverage to a certain class of insureds under such a clause, uninsured motorist coverage must be offered to cover the same class of insureds.’ 292 Ala. at 223, 292 So.2d at 99.
“[Section 32-7-22] is unambiguous in mandating the extension of liability insurance coverage to persons using an insured vehicle with the express or implied permission of the named insured. Accordingly, the uninsured motorist coverage must be as broad. Reaves, supra.
“The insurance policies in question extend uninsured motorist coverage to ‘any other person while occupying an insured automobile.’ See, Definitions— Insuring Agreement III, supra. Under the policy terms, an insured automobile is one used with the express permission of the named insured or his spouse. See, Definitions—Insuring Agreement III, supra.
“Restricting uninsured motorist coverage to occupants of an automobile only if the automobile is used with the express permission of the named insured is re *485 pugnant to the statutory requirements and the decisions of this court. Reading the statutory requirement into the policy, American Southern Insurance Co. v. Dime Taxi Service, Inc., 275 Ala. 51, 151 So.2d 783 (1963), the policy must afford uninsured motorist coverage to the occupants of the automobile if it was used with the express or implied permission of the named insured. Tit. 36, § 74(62)[now § 32-7-23]; State Farm Automobile Ins. Co. v. Reaves, supra.
“The trial court did not make a factual finding as to whether Jessie Silver, Jr., used the automobile with Lucille Conner’s or her husband’s implied permission. Therefore, wé remand to the trial court for such a determination.”
Billups, 352 So.2d at 1100-01.
We recognize that subsequent to Billups the Court,decided Hutcheson v. Farm Bureau Mutual Casualty Insurance Co., 435 So.2d 734 (Ala. 1983). The Court in Hutcheson adopted the circuit court’s order as its opinion. In the order, the circuit court refused to apply § 32-7-22 to invalidate a “household exclusion” contained in an automobile liability policy. The circuit court’s order discussed the history of § 32-7-22, and based on a line of decisions, most of which were released prior to Billups, the circuit court decided that § 32-7-22 did not apply. Of the two cases the circuit court relied on that were post-Billups, one involved a defamation claim and the other involved the definition of who was insured under the policy. See Butler v. Michigan Mut. Ins. Co., 402 So.2d 949 (Ala. 1981)(involving a defamation claim filed under an employer’s policy); and Mathis v. Auto-Owners Ins. Co., 387 So.2d 166 (Ala. 1980)(addressing whether the stepdaughter was covered under the UM coverage in the stepfather’s policy). The circuit court’s order adopted in Hutcheson did not cite or discuss Bill-ups.
This Court has upheld liability policies that extended coverage only to drivers who have the named insured’s express permission to use the covered vehicle. See, e.g., Alfa Mut. Ins. Co. v. Small, 829 So.2d 743 (Ala. 2002); Pharr v. Beverly, 530 So.2d 808 (Ala. 1988); Alabama Farm Bureau Mut. Cas. Ins. Co. v. Hudson, 432 So.2d 1208 (Ala. 1983); Crawley v. Alabama Farm Bureau Mut. Cas. Ins. Co., 295 Ala. 226, 326 So.2d 718 (1976); Alabama Farm Bureau Mut. Cas. Ins. Co. v. Mattison, 286 Ala. 541, 243 So.2d 490 (1971); and Alabama Farm Bureau Mut. Cas. Ins. Co. v. Government Emps. Ins. Co., 286 Ala. 414, 240 So.2d 664 (1970). However, all the above-listed cases concerned a matter of contract interpretation as to whether the policies involved (all of which provided coverage only for express permission) met the burden of proving whether express permission had been given. In none of those cases was the issue whether Alabama law required a liability insurance policy to provide coverage for users with either express or implied permission.
It should be noted that this Court has never addressed whether an “automobile liability policy” under’ § 32-7-6 of the MVSRA had to provide coverage for both express and implied permissive users outside UM coverage. It does not appear that a court ever considered the exclusions set out in § 32-7-7 as an indication of legislative intent that such coverage b¿ included in án “automobile liability policy” as that term is used in § 32-7-6 of the MVSRA. Section 32-7-7 sets out exclusions to’ having DPS determine the security needed for an accident and suspension under § 32-7-6. Section 32-7-7 provides that accidents where the car was operated without the express or implied permission of the owner are exceptions to requiring security and *486 suspending driving privileges under § 32-7-6. If the car was driven with the express or implied permission of the owner, then §.32-7-7 does not apply, and the driver will be subject to the provisions of § 32-7-6. Compare Iszczukiewicz v. Universal Underwriters Ins. Co., 182 F.Supp. 733 (N.D. Ohio 1960)(holding that, where the motor vehicle involved in the accident was being operated with the express permission of the owner, it was contrary to the purpose of the Ohio Motor Vehicle Financial Responsibility Act for the automobile liability policy that could be used in lieu of providing security for damages arising out of the accident to not provide coverage for permissive users).
III.
Having reviewed the MVSRA, the case-law construing the MVSRA, and the legislature’s subsequent adoption of the MLIA, we turn to the present case. Here, the liability policy was issued under the MLIA. Section 32-7A-4, Ala. Code 1975, provides, in pertinent part:
“(a) No person shall operate, register, or maintain registration of, and no owner shall permit another person to operate, register, or maintain registration of, a motor vehicle designed to be used on a public highway unless the motor vehicle is covered by a liability insurance policy, a commercial automobile liability insurance policy, motor vehicle liability bond, or deposit of cash.
“(b)(1) The liability insurance policy or commercial automobile liability insurance policy shall be issued in amounts no less than the minimum amounts set for bodily injury or death and for destruction of property under Section 32-7-6(c),
“(2) The motor vehicle, liability bond shall be in the amount of not less than the minimum amounts of liability coverage for bodily injury or death and for destruction of property under subsection (c) of Section 32-7-6. The bond shall be conditioned on the payment of the amount of any judgment rendered against the principal in the bond or any person responsible for the operation of the principal’s motor vehicle with his or her express or implied consent, arising from injury, death, or damage sustained through the use, operation, maintenance, or control of the motor vehicle within the State of Alabama.
“(3) The deposit of cash with the State Treasurer shall be in' the amount of not less than the minimum amounts set for bodily injury or death and for destruction of property under subsection (c) of Section 32-7-6.”
(Emphasis- added.)
Section 32-7A-2(7), Ala. Code 1975, of the MLIA defines a deposit of cash as
“[fjunds deposited with and held by the State Treasurer as security for payment by the depositor, or by any person responsible for the depositor’s motor vehicle with his or her express or implied consent, of all judgments rendered against the depositor or other authorized operator of the depositor’s motor vehicle arising from injury, ‘ death, or damage sustained through use, operation, maintenance, or control of the motor vehicle within the State of Alabama.”
(Emphasis added.)
Although § 32-7A-4(b)(l) of the MLIA requires that motor vehicles in Alabama be covered by liability insurance and that that coverage not be an amount less than $25,000 for bodily injury to one person in any one accident, the MLIA does not ■ expressly state that coverage under that policy must provide coverage for drivers operating a vehicle with the express or *487 implied permission of the insured. The legislature provided for such coverage when a liability bond or cash deposit is chosen as liability coverage. § 32-7A-4(b)(2) and (3). The legislature could have easily provided for such coverage in liability insurance if that had been its intent.
“This Court has held that insurance companies have the right to limit the coverage offered through the use of exclusions in their .policies, provided that those exclusions do not violate a statute or public policy. Ex parte O’Hare, 432 So.2d 1300 (Ala. 1983); Bell v. Travelers Indem. Co. of America, 355 So.2d 335 (Ala. 1978); Aetna Ins. Co. v. Pete Wilson Roofing & Heating Co., 289 Ala. 719, 272 So.2d 232 (1972). If an individual purchases a policy containing an unambiguous exclusion that does not violate a statute or public policy, courts will enforce the contract as written. Johnson v. Allstate Ins. Co., 505 So.2d 362, 365 (Ala. 1987).”
Hooper v. Allstate Ins. Co., 571 So.2d 1001, 1002 (Ala. 1990). Because we highly value the freedom to contract, we will not alter the expressed intentions of the parties to a contract unless the contract offends some rule of law or contravenes public policy. Vardaman v. Benefit Ass’n of Ry. Emps., 263 Ala. 236, 82 So.2d 272 (1955). When a contract of insurance is in conflict with, or repugnant to, statutory provisions that are applicable to, and con sequently form a part of, the contract, the contract must yield to the statute, and is invalid, since contracts cannot change existing statutory laws. Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949 (Ala. 2004).
In the present case, no statutory provisions of the MLIA require an insurer to include an “omnibus clause” in its policy. An omnibus clause generally includes coverage for the named insured, members of the insured’s household, and drivers operating the insured’s vehicle with the permission of the insured. See Alabama Farm Bureau Mut. Cas. Ins. v. Government Emps. Ins. Co., 286 Ala. 414, 240 So.2d 664 (1970)(noting that most omnibus clauses in insurance policies provide coverage for drivers using the vehicle with the permission of the insured and that courts have interpreted such permission to include express or implied permission). Coverage under an omnibus clause is generally based on the driver’s relationship with the named insured.
Nothing in the MLIA specifically mandates that an insurer provide coverage for someone operating a vehicle with the express or implied permission of the insured. In referencing the MVSRA in the MLIA with regard to insurance coverage, the legislature required that the mandatory liability insurance policy have at least the minimum coverage set out in § 32-7-6 of the MVSRA. § 32-7A-4(b)(l). As to why the legislature mandated that a liability bond and a cash deposit provide coverage for express and implied permissive users, it may be that the legislature did not want to interfere with the freedom of contract between the insured and the insurer. Nothing in the MLIA prevents the insured from purchasing greater coverage than the statutory minimum limits.
The dissent contends that the legislature provided for the coverage of those operating an automobile with the express or implied permission of the insured by defining “who” must be covered by mandatory liability insurance in § 32-7A-4(a).- The dissent asserts that.the general prohibitory language and “universal restriction” in § 32-7A-4(a)—“no owner shall permit another person”—operates “to restrict against any ‘permit[ted]’ use.” 227 So.3d at 493. According to the dissent, “any” in- *488 eludes both express and implied users of an automobile.
The legislature did indeed express its intent as to “who” was to have mandatory liability insurance coverage in § 32-7A-4(a), and that is both owners and operators of automobiles. Again, § 32-7A-4(a) provides:
“No person shall operate, register, or maintain registration of, and no owner shall permit another person to operate, register, or maintain-registration of, a motor vehicle designed to be used on a public highway unless the motor vehicle is covered by a liability insurance policy, a commercial automobile liability insurance policy, motor vehicle liability bond, or deposit of cash.”
An automobile owner usually owns the motor vehicle he or she operates (i.e., drives), but this is not so with an operator. A person who does not own the automobile that he or she operates must purchase an operator’s policy or a non-owner policy in order to qualify for a driver’s license. A non-owner policy of liability insurance provides liability coverage to the purchaser of the policy for any automobile he or she drives. Therefore, a non-owner, who has purchased a non-owner liability policy, driving an automobile could fall under two coverages for the automobile—the liability insurance coverage of his own non-owner’s policy and also the-coverage of the automobile owner’s policy, depending on the terms of the insurance policy, the bond, or deposit of cash. This reflects legislative policy in the MLIA that recognized the need for mandatory liability coverage for both owners and non-owners who drive automobiles on Alabama highways. The legislature obviously had in mind that every time a driver gets behind the wheel of an automobile and takes on the responsibility of driving it, there be in effect at least one insurance policy providing liability coverage.
We disagree with the Grimeses that § 32-7-22 of the MVSRA can be read in pari materia with § 32-7A-4(b)(l) of the MLIA. Had it been the legislature’s intent to so reconcile those statutes, it could have expressly incorporated the requirements of § 32-7-22 of the MVSRA into § 32-7A-4(b)(1) as it-did by expressly incorporating the minimum liability amounts of § 32-7-6 into the MLIA. We recognize that the MVSRA references the MLIA-and that the MLIA references the MVSRA. We also recognize that the MLIA provides that it should be read in pari materia with other laws relative to motor vehicles. § 32-7A-25, Ala. Code 1975. However, most of the references to the MVSRA in the MLIA relate only to minimum coverage amounts. The references to the MVSRA in the MLIA relate only to online insurance verification under the OIVS. Again, had the legislature wanted, it could have expressly referred to § 32-7-22 or simply stated that all mandatory liability policies provide coverage for express and implied permissive users of insured vehicles.
“ ‘ “The fundamental rule of statutory construction is that this Court is to ascertain and effectuate the legislative intent as expressed in the statute. League of Women Voters v. Renfro, 292 Ala. 128, 290 So.2d 167 (1974). In this ascertainment, we must look to the entire Act instead of isolated phrases or clauses; Opinion of the Justices, 264 Ala. 176, 85 So.2d 391 (1956).” ’ ” Bright v. Calhoun, 988 So.2d 492, 497 (Ala. 2008) (quoting City of Bessemer v. McClain, 957 So.2d 1061, 1074-75 (Ala. 2006), quoting in turn Darks Dairy, Inc. v. Alabama Dairy Comm’n, 367 So.2d 1378, 1380 (Ala. 1979)). As we stated in Siegelman v. Chase Manhattan Bank (USA), National Ass’n, 575 So.2d 1041, 1051 (Ala. 1991): “This Court’s role is not *489 to displace the legislature by amending statutes to make them express what we think the legislature should have done. Nor is it this Court’s role to assume the legislative prerogative to correct defective legislation or amend statutes.”
Furthermore, “[t]he Legislature is presumed to be aware of existing law and judicial interpretation when it adopts a statute,” Carson v. City of Prichard, 709 So.2d 1199, 1206 (Ala. 1998), and “we presume ‘that the legislature does not intend to make any alteration in the law beyond what it explicitly declares.’ ” Ware v. Timmons, 954 So.2d 545, 556 (Ala. 2006)(quoting Duncan v. Rudulph, 245 Ala. 175, 176, 16 So.2d 313, 314 (1944)). Had the legislature intended to abrogate our decision in Hubbard in which the Court recognized the distinction between an “automobile liability policy” and a “motor vehicle liability policy” under the MVSRA, it could have plainly stated that mandatory liability policies include an omnibus clause providing coverage for the named insured and drivers operating the vehicle with the express or implied permission of the named insured. The legislature did not include such a requirement even though it did so in the case of liability bonds and cash deposits. “It is not proper for a court to read into the statute something which the legislature did not include although it could have easily done so.” Noonan v. East-West Beltline, Inc., 487 So.2d 237, 239 (Ala. 1986).
We note that the MVSRA still has a field of operation even though Alabama requires that all owners or drivers obtain liability coverage before obtaining a driver’s license or registering a motor vehicle. If a person does not comply with the MLIA and obtain liability insurance and that person is involved in an accident, the MVSRA applies. If that person was required to provide “proof of liability coverage” under § 32-7-22, that policy would have to comply with the express terms of § 32-7-22, including permissive drivers. If a person involved in an accident was thought to be uninsured and that person had insurance, then § 32-7-6 of the MVSRA would apply and that person’s “automobile liability insurance” policy would be an exception to security and a suspended license. Because the MVSRA still has a field of operation, our earlier caselaw remains applicable.
We acknowledge that this Court’s opinion in Billups, supra, held that § 32-7-22 applied to the liability policy such that the UM coverage under the policy also had to comply with the “express or implied” permission requirement of § 32-7-22. Nothing in the case indicated that the liability policy was a “motor vehicle liability policy” as that phrase is used in the MVSRA. However, six years later, the Court in Hutcheson refused to apply § 32-7-22 to all liability policies because the MVSRA applies only after the driver has been involved in an accident, and the policy at issue in Hutcheson was not issued to show proof of financial responsibility under § 32-7-22.
In short, the MLIA, which sets forth the general requirements of liability polices, does not require omnibus coverage. The part of the MVSRA that mandates specific omnibus provisions in “motor vehicle liability” policies was not included in or referenced in the requirements for mandatory liability insurance in the MLIA. An insurer has the right to restrict liability unless that restriction conflicts with statutory requirements or is contrary to public policy.
We now turn to whether the public policy of Alabama requires coverage for those who are using vehicles with the express or implied permission of the named insured. Alabama, unlike the vast majority *490 of states, does not have a statutory provision in the MLIA requiring the inclusion in coverage of express and implied permissive users. Therefore, if such .coverage is to be read into the liability policy at issue in this case, it must be accomplished by determining whether excluding permissive users from coverage violates public policy.
We find instructive Alfa Specialty Insurance Co. v. Jennings, 906 So.2d 195 (Ala. Civ. App. 2005), in which the Court of Civil Appeals addressed whether the MLIA and its mandatory coverage provisions prohibited a “criminal acts” exclusion in a liability insurance policy. The insurer argued that the “criminal acts” exclusion did not violate the public policy the legislature sought to address in the MLIA. The Court of Civil Appeals stated that the intention of the legislature in enacting the MLIA and the question of public policy raised in that case were closely related, and the court considered them together. The Court of Civil Appeals noted that an appellate court’s role in'the area of statutory Construction is to ascertain and effectuate the intent of the legislature, while ascertaining public policy of a state found in its Constitution, statutes, and caselaw, looking primarily to the legislative act. The court went, on to state;
“Further, to the extent this or, any case requires us to look beyond the provisions of a statute directly at issue in order to ascertain whether a contractual provision is in violation of public policy, our Supreme Court has repeatedly declared that ‘[t]he principle that contracts in contravention of public policy are not enforceable should be applied with caution and only in cases plainly within' the reason on which the doctrine rests.’ Lowery v. Zorn, 243 Ala. 285, 288, 9 So.2d 872, 874 (1942); see also, e.g., Livingston v. Tapscott, 585 So.2d 839 (Ala. 1991); Ex parte Rice, 258 Ala. 132, 61 So.2d 7 (1952). As our Supreme Court explained in Milton Construction Co. v. State Highway Department, 568 So.2d 784 (Ala. 1990),
“ ‘ “The courts are averse to holding contracts unenforceable .on the ground of public policy unless their illegality is clear and certain. Since the right of private contract is no small part of the liberty of the citizen, the usual and most important function of courts of .justice is to maintain and enforce contracts rather than to enable parties thereto to escape from their obligations on the pretext of public policy, unless it clearly appears that they contravene public right or the public-welfare. ...
“ ‘ “Many courts have cautioned against recklessness in condemning agreements as being in violation of public policy. Public policy, some courts have said, is a term of vague and uncertain meaning which it is the duty of the law-making power to define, and courts are apt to encroach upon the domain of that branch of the government if they characterize a transaction as invalid because it is contrary to public policy, unless the transaction contravenes some positive statute or some well-established rule of law. Other courts have approved the statement of an English judge that public policy is an unruly horse astride of which one may be carried into unknown paths.' Considerations such as these have led to the statement that the power of the courts'to declare an agreement void for being in contravention of sound public policy is a very delicate and undefined power and, like the power to declare a statute unconstitutional, should be exercised only in cases free from doubt.” ’
“568 So.2d at 788 (quoting 17 Am. Jur. 2d Contracts § 178 (1964))(last emphasis added; other emphasis supplied by the Supreme Court in Milton).
*491 < «
“For purposes of § 82-7A-4(b)(2), a ‘motor vehicle liability bond’ is defined as ‘[a] bond of a surety company duly authorized to transact business in this state, which is conditioned for payments in amounts and under the same circumstances as would be required in a motor vehicle liability insurance policy.’ Ala. Code 1975, § 32-7A-2(ll) (emphasis added). In contrast, § 32-7A~2(5), Ala. Code 1975, defines a ‘deposit of cash’ simply as ‘[Qunds deposited with and held by the State Treasurer as security for payment by the depositor ... of all .judgments rendered against the depositor ... arising from injury, death, or damage sustained through use, operation, maintenance, or control of the motor vehicle within the State of Alabama.’ (Emphasis added.) It is thus apparent that the legislature contemplated that there would be ‘circumstances’ as to which neither the motor-vehicle liability bond contemplated by § 32-7A-4(b)(2) nor the motor-vehicle liability insurance policy contemplated by § 32-7A-4(b)(l) would provide coverage.
“The fact that the legislature contemplated that there would be ‘circumstances’ to which motor-vehicle liability insurance policies under the MLIA would not provide coverage is not surprising. The MLIA was enacted by the legislature against the backdrop of a substantial body of existing law governing automobile liability insurance policies issued in this state, including case-law, statutes, and regulations. Further, § 32-7A-22 provides that the MLIA is to be construed in pari materia with other laws. Among the laws in place when the MLIA was enacted was § 27-14-8, Ala. Code 1975, pursuant to which provisions of insurance policies, including policies of the nature at issue in the present case, must be approved by the Commissioner of Insurance. It is in this context that we recognize that the MLIA was enacted so as to require otherwise financially irresponsible drivers to maintain automobile liability insurance of the nature theretofore normally and routinely-maintained by responsible drivers in this state. To conclude otherwise would require us to construe the MLIA as having been intended to abrogate exclusions, terms, conditions, and other insurance-policy provisions that theretofore had met with approval under Alabama law, including approval by the Commissioner of Insurance, and that were contained in liability insurance policies in force throughout Alabama at the time of the enactment of the MLIA.
“Further, we note that the obligation imposed by the MLIA to maintain automobile liability insurance is an obligation imposed on those persons who own, operate, register, or maintain registration of motor vehicles covered by the MLIA. The provisions of the MLIA at issue here do not purport by their terms to govern or impose any obligation upon insurers.”
Jennings, 906 So.2d at 199-201 (footnotes omitted).
The broad purpose of an omnibus clause is to protect the public against damage resulting from accidents arising because of the negligent use of automobiles. An omnibus clause accomplishes this by including persons operating the vehicle with the express or implied permission of the named insured. The inclusion of the permissive users protects accident victims.
Nevertheless, exclusions in liabili-. ty policies are permitted and are not against public policy if those exclusions do not conflict with statutory law. See, e.g., State Farm Mut. Auto. Ins. Co. v. Auto-Owners Ins. Co., 331 So.2d 638 (Ala. *492 1976)(holding that garage owner’s liability-policy, which excluded coverage when there was “other insurance,” did not violate public policy as set out in the MVSRA when a garage customer was involved in a collision while driving a loaned car from the garage); Hill v. Campbell, 804 So.2d 1107 (Ala. Civ. App. 2001)(holding that it does not violate the public policy of Alabama to exclude liability coverage for punitive damages in a personal-injury case). Also, had the legislature required an omnibus clause in mandating liability insurance policies in the MLIA, then the remedial purpose of such an omnibus clause would require this Court to narrowly construe any exclusion to the coverage. However, the legislature did not do so. As was discussed in Jennings, the legislature contemplated that there would be “circumstances” where a mandatory liability insurance policy would not provide coverage for a victim. This Court has upheld a household exclusion (excluding liability coverage for any member of the insured’s family residing in the insured’s home who was injured by the insured’s negligence) because such an exclusion would prevent fraud and collusion among the insured and the driver. It may be that the legislature did not mandate coverage for permissive users in liability policies based on the same reasoning. See O’Hare v. State Farm Mut. Auto. Ins. Co., 432 So.2d 1294 (Ala. Civ. App. 1982)(Holmes, J., dissenting)(opining that the purpose served by a permissive-driver exclusion may be the avoidance of friendly lawsuits and the possibility of collusion).
With this in mind,’ along with the principle that courts are averse to holding a contract unenforceable on the ground of public policy unless the illegality of the contract is clear and certain, we cannot say that the trial court erred in concluding that the liability policy issued by Alfa did not provide coverage for a user of the motor vehicle who did not have the express permission of the owner or drivers covered by the policy.
AFFIRMED.
Stuart,* Parker, Main, Wise, and Bryan, JJ., concur.
Shaw, J., concurs in the result.
Murdock, J., dissents.

. Liberty Mutual also appealed, but later moved to dismiss its appeal; this Court granted its motion.